28 A.3d 1274

COMMONWEALTH of Pennsylvania, Appellee

v.

Gaylord SPELL, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided Oct. 7, 2011.

586

Darrell W. Haeberle, Lawrence County Public Defender's Office, Dennis Anthony Elisco, New Castle, for Gaylord Spell.

John J. Bongivengo, Lawrence County District Attorney's Office, New Castle, Amy Zapp, PA Office of Attorney General, William John Flannery, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice EAKIN.

This is a direct appeal from a death sentence imposed after a jury convicted appellant of first degree murder and abuse of a corpse.[1] We affirm the first degree murder conviction, but vacate appellant's sentence of death and remand to the trial court for imposition of a life sentence.

In the early morning hours of March 1, 2007, a custodian at the Lawrence County Career and Technical Center noticed a van traveling slowly through the school's parking lot. Later that morning, a teacher at the Center found a nude body lying sideways in the parking lot, and called the police. Investigators soon identified the victim and determined she was last seen alive on the evening of February 27. Around 3:00 p.m. on March 1, a PennDOT road crew alerted State Police after discovering clothing strewn along a roadway in Butler County. State Police recovered a bra, blue jeans, a sock, a flannel long-sleeve shirt, thermal bottoms, a black slipper, a sock covered

1. 18 Pa.C.S. §§ 2502(a), 5510.

in blood, a sweatshirt covered in blood, a blood-soaked pillow, a bloodstained cover for the arm of a couch, and a blood-covered tablecloth.

Dr. James Smith, a board certified forensic pathologist, performed an autopsy on the victim's body, which revealed ten lacerations on her head and face, including two on both her left and right temple, three on the back of her head, and three on her scalp. The victim suffered a fracture at the base of her skull, a laceration of her brain, and a fracture on the back of her skull. She also had two broken ribs and bruising on her head, face, lower back, and legs. Dr. Smith determined the cause of death was blunt force trauma to the head. Because the lacerations looked identical, he opined she had been repeatedly struck with the same round object.

State Police found material under the victim's fingernails and seminal fluid on her body, which allowed them to produce a DNA profile. The profile was entered into the Combined DNA Index System, a nationwide database which includes DNA profiles of convicted felons; a database in Virginia matched the DNA profile to appellant. DNA testing further revealed the blood on the thermal bottoms and black slipper was the victim's, while blood from the tablecloth matched both the victim and appellant.

Appellant was interviewed by State Police; he denied meeting the victim or ever having her in his residence. State Police executed a search warrant of appellant's residence, and discovered a couch matching the arm cover recovered on the road. A sequin was found that matched the bra discovered along the roadway. Bloodstains were found on appellant's mattress and the floor between his bed and nightstand. State Police also executed a search warrant for appellant's van, and found the victim's blood on the driver-side door window.

Investigation revealed appellant was scheduled to work February 28, but called his employer to excuse himself; he returned to work March 1, at 2:47 p.m. The clothing, found around 3 p.m. that day, was on a route appellant could have used to get to his workplace.

Appellant was charged with criminal homicide and abuse of a corpse; a jury convicted him of first degree murder and abuse of a corpse. At the penalty phase, the jury found one aggravating circumstance: the murder was committed by means of torture. *See* 42 Pa.C.S. § 9711(d)(8). The jury found no mitigating circumstances, and accordingly, appellant was sentenced to death. *See* 42 Pa.C.S. § 9711(c)(1)(iv).

■ When a death sentence is imposed, "this Court has an obligation to review the record to ensure the evidence sufficiently supports the first degree murder conviction and the finding of aggravating circumstances, and that the sentence was not the product of passion, prejudice, or other arbitrary factors." *Commonwealth v. Dick*, 602 Pa. 180, 978 A.2d 956, 958 (2009) (citing 42 Pa.C.S. § 9711(h)(3)(i)-(ii)). Appellant raises four other issues in his appeal, which we have reordered for ease of discussion: whether there is sufficient evidence to support the aggravating circumstance of torture; whether the trial court inappropriately admitted two photographs of the victim's body; whether the Commonwealth's DNA expert improperly referred to appellant's prior bad acts; and whether appellant was entitled to a voluntary manslaughter jury instruction.

### Sufficiency Review of First Degree Murder Conviction

■ When reviewing the sufficiency of the evidence for first degree murder, we are "obliged to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt." *Commonwealth v. Brown*, 605 Pa. 103, 987 A.2d 699, 705 (2009) (citing *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 68 (2008)). "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 92 (2009) (quoting *Commonwealth v. Kennedy*, 598 Pa. 621, 959

A.2d 916, 920 (2008)). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). The Commonwealth may use solely circumstantial evidence to prove a killing was intentional, and the fact-finder " 'may infer that the defendant had the specific intent to kill the victim based on the defendants use of a deadly weapon upon a vital part of the victims body.' " *Brown*, 987 A.2d at 705 (quoting *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 651 (2008)).

We find the Commonwealth provided sufficient evidence to prove each element of first degree murder. Appellant called off work the day after the victim was last seen. The next morning, a van was seen driving slowly through the parking lot where, a short time later, the victim's body was found. The victim's blood was found in appellant's residence and his van. Appellant's DNA was found under the victim's finger-nails and on her body. Clothes and other evidence containing the victim's blood were found along a route between appellant's residence and his place of employment, shortly after he appeared for work. The tablecloth found on the side of the road was stained with the victim's and appellant's blood.

Dr. Smith, who performed the autopsy on the victim's body, testified the victim suffered from ten lacerations to her head and face caused by a round blunt object. She suffered two broken ribs, multiple bruises, fractures at the base and back of her skull and a brain laceration, and died from blunt force head trauma. This evidence allowed the jury to find the victim was unlawfully killed, appellant killed her, and he acted with malice and a specific intent to kill.

**Guilt Phase Claims**

█ The trial court admitted two photographs of the victim's body lying in the parking lot where it was found. The court determined the photographs were not inflammatory because they did not accentuate the victim's injuries. Noting the photographs were taken from a distance, the court found they did not depict the victim's injuries in an unduly graphic

or unfairly prejudicial manner. The court reasoned these photographs were relevant to the abuse of a corpse charge because they showed the body as it was discovered, showed the victim's injuries, and clarified witness testimony regarding the body and its location.

Appellant claims these photographs were inflammatory because they were in color and the victim's blood-covered body and face can be seen in one photograph. Appellant also contends the prejudicial effect of the photographs outweighed their probative value, as they were not useful to show the victim's injuries, and the Commonwealth did not offer any specific reason to introduce them. Appellant also alleges these photographs were merely cumulative as three witnesses testified to the condition and location of the victim's body.

The Commonwealth contends the photographs were not inflammatory because they were not close-ups of the victim's body and did not show any visible wounds. The Commonwealth argues the photographs were properly admitted, as they corroborated witness testimony regarding the condition of the victim's body and that appellant left the victim's body in the parking lot.

■■ We will affirm a trial court's admission of photographs absent an abuse of discretion. *Commonwealth v. Pruitt*, 597 Pa. 307, 951 A.2d 307, 319 (2008) (citing *Commonwealth v. Solano*, 588 Pa. 716, 906 A.2d 1180, 1191 (2006)). Further,

When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:

First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly

outweighs the likelihood of inflaming the minds and passions of the jurors.

*Id.* (quoting *Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 531 (2003)).

While appellant claims the presence of blood in these color photographs is inflammatory, that result is not made out by the mere depiction of blood. Although "[t]he presence of blood on the victim depicted in the photographs is unpleasant, it is not in and of itself inflammatory." *Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203, 217 (1997) (citing *Commonwealth v. Rivers,* 537 Pa. 394, 644 A.2d 710, 716 (1994)). Murder evidence is not often agreeable, but sanguinity does not equal inadmissibility.

"[P]hotographic images of a homicide victim are often relevant to the intent element of the crime of first-degree murder." *Pruitt,* 951 A.2d at 319 (citing *Solano,* 906 A.2d at 1191). Since a jury can infer one acted with an intent to kill when injuring a vital area of the body, photographs showing that vital area are relevant to showing appellant had an intent to kill. The photographs aided the jury in understanding witness testimony regarding the body's condition and location. The lack of blood splatter in the photographs was relevant to showing the parking lot was not the murder scene. As these photographs depicted the condition and location of the victim's body when it was discovered, they were also relevant to the abuse of corpse charge.

While appellant argues such evidence is cumulative, as other witnesses testified to the condition of the victim's body in the parking lot, a witness's ability to testify as to the condition of a body does not render photographs of the body inadmissible. *See, e.g., id.,* 951 A.2d at 320 (rejecting argument that autopsy photographs were cumulative of witness testimony); *Commonwealth v. Rush,* 538 Pa. 104, 646 A.2d 557, 560 (1994) ("[E]ven where the body's condition can be described through testimony from a medical examiner, such testimony does not obviate the admissibility of photographs.").

The trial court reduced any potential for prejudice caused by the photographs by prohibiting them from entering the jury room during deliberations and instructing the jury it should not allow the photographs to inflame it. *See Pruitt,* 951 A.2d at 319 (noting appropriate instruction can minimize danger of inflaming jury). Clearly, the trial court did not abuse its discretion in admitting these photographs.

Appellant next argues the DNA expert implied he committed criminal acts in Virginia; the expert noted appellant had a matching DNA profile in Virginia, thereby improperly introducing prior bad acts evidence, he contends. The trial court granted appellant's motion *in limine* to exclude any reference to felons in descriptions of the DNA databases used by the Commonwealth. While the witness testified a Virginia database matched the DNA profile to appellant, the court found the expert neither referenced nor mentioned that the database contained felons' profiles. Further, the court noted appellant failed to timely object to the expert's testimony at trial.

The Commonwealth also argues appellant waived this claim by failing to make a timely objection to the testimony, and appellant concedes: "a review of the record indicates that the discussions of this matter were not preserved on the record and no timely objection was made on the record. Therefore, this issue would be deemed to be waived." Appellant's Brief, at 15. We agree. Even if the witness had mentioned the source of the Virginia profile, by failing to timely object to this testimony, appellant has waived this argument, and he cannot raise it now. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

The trial court also denied appellant's request to instruct the jury on voluntary manslaughter.[2] The trial court

2. The voluntary manslaughter statute provides:

(a) GENERAL RULE.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of

found there was no evidence appellant was provoked, or that he did not have adequate time to "cool off." The court concluded there was no evidence to support a voluntary manslaughter charge.

Appellant did not present any witnesses or evidence during the guilt phase, but points to the Commonwealth's evidence showing: the victim suffered numerous blows to the head; she was found in the nude; appellant engaged in sexual intercourse with the victim; blood was found on the victim's undergarments, a bedroom pillow, and in appellant's bedroom; and the victim may have engaged in acts of prostitution. Appellant claims the victim's injuries are those caused by someone in the heat of passion, and a jury could infer that he and the victim had a dispute over payment, provoking him to commit voluntary manslaughter.[3]

When reviewing a challenge to a jury instruction, we review the charge as a whole to ensure it was a fair and complete statement of the law. *Montalvo*, 986 A.2d at 99 (quoting *Commonwealth v. Saunders*, 529 Pa. 140, 602 A.2d 816, 818 (1992)). This Court has recently explained:

"[A] voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support

> the killing he is acting under a sudden and intense passion resulting from serious provocation by:
> (1) the individual killed; or
> (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
> (b) UNREASONABLE BELIEF KILLING JUSTIFIABLE.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.
> (c) GRADING.—Voluntary manslaughter is a felony of the first degree.
> 18 Pa.C.S. § 2503.

3. The trial court also found appellant did not present any evidence that he had an unreasonable belief his killing of the victim was justifiable. As appellant does not argue this theory of voluntary manslaughter before this Court, he has waived it on appeal. *See Commonwealth v. Walter*, 600 Pa. 392, 966 A.2d 560, 566 (2009) (citing *Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 799 n. 12 (2008)) (failure to sufficiently discuss issue results in waiver).

such a verdict." To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, Appellant acted under a sudden and intense passion resulting from *serious provocation* by the victim.

*Id.*, 986 A.2d at 100 (emphasis in original) (citations omitted). After reviewing the record, we confirm there is no evidence appellant was actually provoked, that provocation existed at the time of the murder, or that it caused him to kill the victim. Without such evidence, there is no support for a voluntary manslaughter charge. Appellant needs more than his own creativity and speculation to support the requested jury instruction, and the trial court properly denied appellant's request.

### Aggravating Circumstance of Torture

Having determined appellant's conviction should be affirmed, we proceed to the sufficiency of the evidence supporting the finding of torture, the sole aggravating circumstance supporting the death sentence and the only sentencing phase claim. The trial court concluded sufficient evidence supported the jury's finding the Commonwealth had proven the aggravating circumstance of torture. The court noted the victim was missing for over 24 hours, suggesting her injuries could have been sustained over a prolonged time period. The victim sustained ten lacerations to her head and face, at least five of which were not likely to cause death, and most of those were not likely to cause unconsciousness; thus, the court believed it was likely the victim was conscious as appellant was striking her. The victim also suffered two broken ribs, four bruises on her lower lumbar area, two bruises on the front of her left leg, bruising on the front of her left thigh and left calf, a bruise on her right buttock, and a bruise on her left shoulder. The court found the victim's injuries caused her a severe amount of pain which was "unnecessarily heinous, atrocious, or cruel," supporting the jury's finding appellant tortured her. Trial Court Opinion, 9/30/09, at 21.

Appellant argues there is insufficient evidence to support the aggravating circumstance of torture, as there is no evidence he intended to cause the victim pain separate from his intent to kill. Appellant claims the blows to the victim's head were to a vital area of her body, thus delivered with an intent to kill. Because any one of the majority of these blows could have rendered the victim unconscious, appellant suggests the victim was likely unconscious and not suffering any pain after the first blow. Appellant contends there was no evidence showing the victim's wounds were inflicted over a long time period, or that she was restrained.

The Commonwealth argues the victim suffered multiple injuries in both vital and non-vital areas of her body, including multiple non-fatal, but painful, wounds such as her broken ribs. The Commonwealth further contends because not all of the blows were fatal, the jury could have concluded the victim suffered non-fatal blows before she died. As the victim was missing for more than 24 hours, the Commonwealth claims appellant could have injured the victim over that length of time.

■■■ The problem with the Commonwealth's position is that it cannot prevail by proving what might have happened— it always has the burden to provide the existence of an aggravating circumstance beyond a reasonable doubt. 42 Pa.C.S. § 9711(c)(1)(iii). We have repeatedly explained:

To establish that a murder was committed by means of torture, the Commonwealth must show that the defendant "intentionally inflicted ... a considerable amount of pain and suffering that was unnecessarily heinous, atrocious, or cruel, manifesting exceptional depravity." "Implicit in subsection 8 is the requirement of an intent to cause pain and suffering in addition to the intent to kill." The intent to torture may be proven from the circumstances surrounding the killing. This Court has listed the factors to be considered in determining whether the torture aggravator applies as including, but not limited to: (1) the manner in which the murder was accomplished, including the number and type of wounds inflicted; (2) whether the wounds were inflicted on

a vital or non-vital area of the body; (3) whether the victim was conscious when the wounds were received; and (4) the duration of the episode. In reviewing a jury's finding of torture, this Court examines the evidence in the light most favorable to the Commonwealth, and draws all reasonable inferences in its favor.

*Montalvo*, 986 A.2d at 109–110 (quoting *Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406, 425 (2008)) (internal citations omitted).

Although the victim was missing for more then 24 hours, there is no actual evidence regarding the duration of appellant's attack. It is possible the attack took hours, but it is equally possible it was complete in short order. There simply is no evidence to prove how long the assault lasted—there is no proof that appellant engaged in a prolonged attack or a brief intense one. The Commonwealth's burden is not to prove what could have been—it must prove what actually was.

█ Moreover, there is no evidence the victim was conscious when appellant inflicted all these wounds. We previously held "[h]ow long a victim can withstand the cruel, depraved attacks of her murderer before unconsciousness overtakes the mind is not part of the Commonwealth's burden nor is such a consideration part of the aggravating circumstance under discussion." *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 709 (1989). While the jury is not obligated to conclude the first potentially fatal injury resulted in immediate death, *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 289 (2008), it is clear that " 'whether the victim was conscious when the wounds were received' " is one of the factors in determining whether the torture aggravator applies. *Montalvo*, 986 A.2d at 110 (quoting *Powell*, 956 A.2d at 425). A torture aggravator is supported when there is some indication the victim was conscious, or at least could have been alive, when suffering his or her wounds. *See, e.g., id.* (noting medical testimony found all victim's injuries occurred while she was alive); *Powell*, 956 A.2d at 426 (observing defendant admitted victim was conscious during multiple beatings); *Commonwealth v. Cuevas*, 574 Pa. 409, 832 A.2d 388, 395

(2003) (finding witness testified victim was alive after attack); *Commonwealth v. Karenbauer,* 552 Pa. 420, 715 A.2d 1086, 1099 (1998) (noting medical testimony indicated victim was conscious when attacked); *Marinelli,* 690 A.2d at 212 (accepting medical testimony that victim was conscious during beating); *Commonwealth v. Stevens,* 543 Pa. 204, 670 A.2d 623, 628 (1996) (relying upon medical testimony that shooting was incapable of killing or causing victim to lose consciousness).

A careful review of the record shows there was no testimony or evidence regarding the order of injuries. Further, there was no evidence as to when in the series of blows the victim lost consciousness or died, or whether she was conscious or alive during the attack. It is possible she did not die until the end—it is equally possible, however, that she expired at the outset. As the Commonwealth cannot establish which is true, there was insufficient evidence for the jury to determine the victim was conscious during the attack.

We have in other cases affirmed the torture aggravator in the absence of medical testimony showing the victim was conscious during the attack, because there was an indication the victim was alive after being bound and the manner of death included strangulation and stabbing in addition to beating. *See Pagan,* 950 A.2d at 289. Here, although appellant inflicted multiple blows upon the victim, he did not switch his manner of attack, and he used the same weapon, which is consistent with a concerted and efficient attack. There is no evidence the victim was bound, and none showing appellant was not content to beat the victim. *See Karenbauer,* 715 A.2d at 1099 (quoting *Commonwealth v. Auker,* 545 Pa. 521, 681 A.2d 1305, 1321 (1996)) ("There must be an indication that the killer was not satisfied with the killing alone."). Just as "to read the aggravating circumstance of torture so broadly as to cover all painful demises would be contrary to the General Assembly's intent regarding aggravating circumstances," *Commonwealth v. Ockenhouse,* 562 Pa. 481, 756 A.2d 1130, 1136 (2000), to find this beating was torture would allow the torture aggravator to be applied to nearly all beating deaths. Such a result would be contrary to the General Assembly's

intent. Accordingly, the manner of death does not support a finding that appellant intended to torture the victim.

We are mindful that the Commonwealth's theories about the torturous nature of the crime are not inconsistent with the facts, but theories are not the equivalent of proof. There is insufficient evidence from the manner of death to indicate appellant sought to torture the victim. Neither is there actual evidence regarding the duration of appellant's attack, the order of the blows, or at what point in the attack the victim died. As such, there is insufficient evidence to support the aggravating circumstance of torture. "If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence, then it shall remand for the imposition of a life imprisonment sentence." 42 Pa.C.S. § 9711(h)(4). Therefore, because there are no other aggravating circumstances to support appellant's death sentence, we must vacate the death sentence and remand this case to the trial court for the imposition of a life sentence. As we are vacating appellant's death sentence, we need not consider whether the sentence imposed was the product of passion, prejudice, or any other arbitrary factor. *Id.*, § 9711(h)(3)(i)-(ii).

In conclusion, our review of the record establishes sufficient evidence supports appellant's first degree murder conviction, and we reject appellant's guilt phase claims. However, we conclude the Commonwealth was unable to present sufficient evidence to prove the existence of an aggravating circumstance of torture beyond a reasonable doubt. Accordingly, we vacate the sentence of death and remand to the trial court for imposition of a life sentence. 42 Pa.C.S. § 9711(h)(4).

Judgment of sentence of death vacated; case remanded.

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.