J-A30042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAHEEM ADAMS, | |
| Appellant | No. 1016 EDA 2014 |

Appeal from the Judgment of Sentence November 22, 2013
in the Court of Common Pleas of Northampton County
Criminal Division at No.: CP-48-CR-0000287-2013

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 04, 2015**

Appellant, Naheem Adams, appeals from the judgment of sentence imposed following his jury conviction of third-degree murder.[1]  We affirm.

This case arises from the shooting death of George Jeter.  The relevant facts and procedural history are as follows.  On July 27, 2012, at approximately 7:00 p.m., Harry Booker and Quincy Wilson went to Michael Comito's apartment to purchase crack cocaine.  Comito called Appellant to arrange the purchase, but Appellant did not have any crack cocaine.  Comito then called Jeter, and arranged to buy two bags of crack.  Appellant arrived at Comito's apartment at approximately 8:00 p.m.  He entered the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(c).

apartment, indicated that he did not have any drugs, and walked out the back door and sat on the back step. Jeter arrived at the apartment at approximately 9:00 p.m., and he and Comito completed the drug transaction. Jeter left through the side door and Comito and the other individuals inside the house heard what sounded like people pushing and shoving each other outside. Comito opened the door to see what was taking place and Appellant told him to go back in the house and shut the door. Comito shut the door and heard multiple gunshots. Comito opened the door, saw Jeter lying on the ground, unsuccessfully attempted to revive him, and called 911. Another individual in the apartment, Karen Culver, looked out of a window and saw a person running away.

Appellant and his girlfriend moved out of their apartment approximately two days after the murder. In October 2012, police arrested him in New York. Appellant informed detectives that he left the Easton area on July 27, 2012, and that he never returned. Videotape surveillance footage obtained by police shows Appellant walking in the vicinity of Comito's apartment at 8:22 p.m. on the night of Jeter's murder.

On July 30, 2013, the Commonwealth filed a motion *in limine* requesting that the court permit it to introduce evidence of Appellant's prior bad act of drug dealing pursuant to Pennsylvania Rule of Evidence 404(b). Specifically, the Commonwealth sought to present evidence that Appellant was a drug dealer who had regularly provided drugs to the residents of Comito's house. The trial court granted the motion on August 1, 2013. The

case proceeded to a four-day jury trial, and the testimony established that Jeter died as a result of multiple gunshot wounds to the chest and torso. On August 8, 2013, the jury found Appellant guilty of third-degree murder.[2]

On November 22, 2013, after considering a pre-sentence investigation (PSI) report, the trial court sentenced Appellant to a term of not less than twenty nor more than forty years' incarceration. On December 2, 2013, Appellant filed a timely post-sentence motion, which the trial court denied following argument. This timely appeal followed.[3]

Appellant raises five issues for our review:

1. Was the evidence presented at trial insufficient, as a matter of law, to sustain a conviction for the offense of third degree murder such that the trial court erred when it did not enter a judgment of acquittal?

2. Was the jury's verdict of third degree murder against the weight of the evidence such that Appellant is entitled to a new trial?

3. Did the trial court err in allowing Appellant's prior bad acts to be admissible under 404(b)(1)?

4. Was the Commonwealth erroneously permitted to introduce into evidence pictures of the victim's face and body?

5. Did the trial court err in the discretionary aspects of its sentence?

---

[2] The jury found Appellant not guilty of first-degree murder.

[3] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on April 21, 2014. *See* Pa.R.A.P. 1925(b). The court filed a Rule 1925(a) opinion on May 16, 2014. *See* Pa.R.A.P. 1925(a).

(Appellant's Brief, at 6).

In his first issue, Appellant challenges the sufficiency of the evidence to support his third-degree murder conviction. (**See id.** at 30-38). He maintains that the Commonwealth failed to prove that he was involved in the homicide, and that it did not establish the element of malice. (**See id.** at 33, 37). He contends that the testimony of the Commonwealth's witnesses, whom he characterizes as "incoherent drug users," was inconsistent and inconclusive. (**Id.** at 37; **see id.** at 36). He points to the testimony of "[t]he Commonwealth's most inconsistent witness, Mike Comito," to support his argument that the Commonwealth's evidence was insufficient as a matter of law. (**Id.** at 34; **see id.** at 36). This issue lacks merit.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014) (citations omitted).

The Pennsylvania Crimes Code defines murder of the third degree as "[a]ll other kinds of murder" other than first or second-degree murder. 18 Pa.C.S.A. § 2502(c). "Murder in the third degree is an unlawful killing with malice but without the specific intent to kill." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011) (citations omitted).

> To convict an accused of third degree murder, the Commonwealth must prove that the accused killed another person with malice.
>
> > The elements of third degree murder, as developed by case law, are a killing done with legal malice but without specific intent to kill required in first degree murder. Malice is the essential element of third degree murder, and is the distinguishing factor between murder and manslaughter.
> >
> > Malice under the law comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intending to be injured. Malice may be inferred from the attending circumstances of the act resulting in death. Otherwise stated, malice may be found where the defendant has consciously disregarded an unjustified and extremely high risk that h[is] conduct might cause death or serious injury to another.

*Commonwealth v. Geiger*, 944 A.2d 85, 90 (Pa. Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009) (citations and quotation marks omitted).

Our Supreme Court has stated that "[m]alice . . . may be inferred from the use of a deadly weapon upon a vital part of the victim's body."

*Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (citation omitted).

Here, the record reflects that Comito had asked both Appellant and Jeter to supply him with crack cocaine in the past, and that, on the night of Jeter's murder, he called Appellant to arrange a drug purchase. (*See* N.T. Trial, 8/06/13, at 79-80, 82-83). Appellant told Comito that he was "out of stuff," and Comito called Jeter instead to buy the crack. (*Id.* at 82; *see id.* at 80, 83, 86). Although Appellant did not have any crack to sell, he arrived at Comito's apartment anyway and sat on the back porch. (*See id.* at 86-87, 90, 94). Jeter then arrived at Comito's apartment, completed the drug transaction, and left the house. (*See id.* 92, 95). Immediately after Jeter walked out the door, Comito and the other individuals in the apartment heard what sounded like people fighting on the porch. (*See id.* at 95-96). Comito opened the door and Appellant told him to "get back in the house, shut the door." (*Id* at 99).[4] Comito shut the door and then heard multiple gunshots. (*See id.* at 100). Karen Culver looked out of the window into the backyard and saw a person running away. (*See id.* 154-57). After the

---

[4] At trial, Comito consistently testified that Appellant told him to shut the door. (*See* N.T. Trial, 8/06/13, at 99, 125). However, at the preliminary hearing, he testified that he could not be sure that the voice he heard telling him to shut the door was Appellant's. (*See id.* at 124-25; *see also* N.T. Preliminary Hearing, 1/18/13, at 31).

murder, Appellant and his girlfriend left the Easton area abruptly and went to New York. (*See* N.T. Trial, 8/07/13 at 12-13, 89-90).

Upon review of the record, and viewing the evidence in the light most favorable to the Commonwealth, *see Cahill*, *supra* at 300, we conclude that the trial court properly found the evidence was sufficient to sustain Appellant's conviction. Although Comito's testimony at trial was inconsistent with his testimony at the preliminary hearing, it was for the jury as factfinder to resolve credibility issues. *See id.* Comito consistently testified at trial that Appellant directed him to shut the door, and it was for the jury to believe "all, part, or none of the evidence." *Id.* Further, although Appellant specifically challenges the element of malice, the evidence established that Jeter's death was caused by multiple gunshot wounds to the chest and torso, and the jury could infer "[m]alice . . . from the use of a deadly weapon upon a vital part of the victim's body." *Ramtahal*, *supra* at 607. The record supports the trial court's determination that, although there were some inconsistencies in the Commonwealth witnesses' testimony, the jury carefully deliberated and considered the offenses charged, and returned a verdict for the lesser offense of third-degree murder. (*See* Trial Court Opinion, 5/16/14, at 12-14). Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant challenges the weight of the evidence to support his conviction. (*See* Appellant's Brief, at 38-41).[5] He claims that the jury ignored or failed to give adequate weight to certain evidence that was favorable to him, and he again argues that the Commonwealth's witnesses were not credible. (*See id.*). This issue lacks merit.

Our standard of review is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

_____

[5] Appellant preserved this issue by raising it in his post-sentence motion. (*See* Post-Sentence Motion, 12/02/13, at 3); *see also* Pa.R.Crim.P. 607(A)(3).

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted).  When reviewing a weight of the evidence claim, this Court carefully considers the findings and reasons advanced by the trial court, because the trial judge had the opportunity to hear and see the evidence presented.  ***See Commonwealth v. Brown***, 48 A.3d 426, 432 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

> Here, the trial court determined:
>
> Based on the evidence presented at trial, this court was not inclined to upset the jury's verdict after they were presented with sufficient evidence and thoughtfully deliberated. . . .
>
> . . . The jury made credibility determinations when presented with conflicting and inconsistent testimony.  The verdict was not so contrary to the evidence as to shock one's sense of justice. . . .

(Trial Ct. Op., at 14) (most capitalization omitted).

After review of the record, we cannot conclude that the court's decision constituted a palpable abuse of discretion.  ***See Boyd***, ***supra*** at 1275.  The jury, as finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, was free to believe all, part, or none of the evidence.  ***See id***. at 1274.  Accordingly, Appellant's weight claim does not merit relief.

In his third issue, Appellant argues that the trial court erred by permitting the Commonwealth to introduce evidence of his prior bad act of drug dealing.  (***See*** Appellant's Brief, at 41-43).  He claims that this evidence was inadmissible under the general rule set forth in Pennsylvania

Rule of Evidence 404(b)(1), and that the Commonwealth failed to demonstrate the applicability of any exception set forth in Rule 404(b)(2). (*See id.* at 41-42). Appellant maintains that the court's admission of evidence indicating he may have been a drug dealer in the past "misguided the jury to believe that [he] has the criminal propensity to commit the current crime." (*Id.* at 43). We disagree.

"Rulings on the admissibility of evidence are within the discretion of the trial judge, and such rulings form no basis for a grant of appellate relief absent an abuse of discretion." *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008), *cert. denied*, 556 U.S. 1131 (2009) (citation omitted).

> . . . [E]vidence of crimes [, wrongs, or acts] other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. [*S*]*ee* Pa.R.E. 404(b)(1). (providing that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Commonwealth v. Ferguson*, 2015 WL 49438, at *3 (Pa. Super. filed Jan. 5, 2015) (case citations and some quotation marks omitted). "In weighing whether evidence of prior bad acts will be admissible, however, the trial

court must still weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence." **Commonwealth v. Dowling**, 883 A.2d 570, 578 (Pa. 2005), *cert. denied*, 549 U.S. 838 (2006) (citation omitted); **see also** Pa.R.E. 404(b)(2).

Here, upon review, we conclude that the trial court did not abuse its discretion in admitting evidence of Appellant's prior drug dealing. **See Powell**, **supra** at 419. The evidence was offered not to show Appellant's propensity to commit crime, but in the context of establishing his motive for shooting Jeter, a rival drug dealer who supplied crack to the same individuals Appellant supplied. **See** Pa.R.E. 404(b)(2); **see also Commonwealth v. Fisher**, 769 A.2d 1116, 1128 (Pa. 2001), *cert. denied*, 535 U.S. 906 (2002) (concluding that court properly allowed testimony regarding appellant's prior drug-dealing activities offered to establish his motive for killing). Evidence showing that Appellant routinely provided drugs to Comito also formed part of the natural development of the facts and history of this case, **see Ferguson**, **supra** at *3; Appellant's involvement in drug dealing was the reason Comito contacted him on the night of Jeter's murder.

Furthermore, the trial court instructed the jury immediately following the testimony, and at the conclusion of trial, regarding the proper consideration to give the prior bad acts evidence so that jurors would not regard it as evidence of Appellant's general bad character. (**See** N.T. Trial,

8/06/13, at 105-06; N.T. Trial, 8/08/13, at 110-11). These instructions, which the jury is presumed to have followed, eliminated any risk of unfair prejudice. *See Commonwealth v. Burno*, 94 A.3d 956, 977 (Pa. 2014) (stating juries are presumed to follow trial court's instructions); *see also Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010) (concluding cautionary instructions ameliorated any undue prejudice caused by introduction of prior bad acts evidence). Accordingly, Appellant's third issue does not merit relief.

In his fourth issue, Appellant claims that the trial court erroneously permitted the Commonwealth to introduce photographs depicting Jeter's face and body into evidence. (*See* Appellant's Brief, at 43-45). Specifically, Appellant challenges the admission of three photographs showing the victim's body at the crime scene, and four photographs depicting his body at the autopsy (Commonwealth Exhibits 4, 6, 13, and 17-20). (*See id.* at 44). Appellant argues that the pictures are gruesome and inflammatory and the court should have excluded them because they lacked essential evidentiary value. (*See id.*). He asserts that any evidentiary value the photographs may have had was outweighed by the likelihood that they would inflame the passions of the jury. (*See id.*). This issue is waived and would not merit relief.

"A defendant must make a timely and specific objection at trial or face waiver of h[is] issue on appeal." **Commonwealth v. Olsen**, 82 A.3d 1041, 1050 (Pa. Super. 2013) (citations omitted).

Here, Appellant does not direct us to where in the substantial record the Commonwealth presented the photographs of the victim, but the Commonwealth does. (**See** Appellant's Brief, at 43-45; Commonwealth's Brief, at 19). Our review of the relevant part of the trial transcripts reflects that the defense offered no objection to the admission of the photographs. (**See** N.T. Trial 8/05/13, at 8-11, 50-51, 55-56; N.T. Trial 8/06/13, at 43-46). "Such failure to offer a timely and specific objection results in waiver of this claim." **Commonwealth v. Bruce**, 916 A.2d 657, 671 (Pa. Super. 2007), *appeal denied*, 932 A.2d 74 (Pa. 2007) (citation omitted) (concluding that appellant waived challenge to admission of photographs where defense offered no objection to their admission at trial).

Moreover, even if Appellant had properly preserved this issue, it would not merit relief.

> We will affirm a trial court's admission of photographs absent an abuse of discretion. Further,
>
>> When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:
>>
>> First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's

- 13 -

understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Spell*, 28 A.3d 1274, 1279 (Pa. 2011) (citations omitted).

Here, the trial court determined that the photographs did not depict gruesome damage to the victim's body and were not inflammatory. (*See* Trial Ct. Op., at 17). It stated that the "photographs were admissible as relevant evidence . . . [and] were necessary to assist the jury in understanding the facts of this case[.]" (*Id.*). Further, the court "reduced any potential for prejudice caused by the photographs by . . . instructing the jury it should not allow the photographs to inflame it." *Spell*, *supra* at 1280 (citation omitted); *see also Burno*, *supra* at 977; (N.T. Trial, 8/08/13, at 112). After review of the photographs, we discern no abuse of discretion in the trial court's decision to admit them. *See Spell*, *supra* at 1279. Accordingly, Appellant's fourth issue would not merit relief, even if it we did not deem it waived.

In Appellant's fifth and final issue, he challenges the discretionary aspects of his sentence. (*See* Appellant's Brief, at 45-47). Specifically, he claims that the trial court impermissibly relied on his lack of remorse in sentencing him to the statutory maximum sentence, under circumstances where he continues to maintain his innocence. (*See id.* at 29, 46-47). He

also claims that the sentence constitutes too severe a punishment because the court failed to consider mitigating factors such as his age and capacity for rehabilitation. (*See id.* at 46). This issue does not merit relief.

Our standard of review in sentencing matters is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013), *appeal denied*, 85 A.3d 481 (Pa. 2014) (citation omitted).

However, "[t]he right to appeal the discretionary aspects of a sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011) (citation omitted).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*See* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-30 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citation omitted).

- 15 -

In the instant case, Appellant has complied with the first three requirements because he filed a timely notice of appeal, preserved his claim in a timely post-sentence motion, and included a Rule 2119(f) statement in his brief. *See id.*

With respect to the fourth requirement:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013), *appeal denied*, 77 A.3d 1258 (Pa. 2013) (citations and quotation marks omitted).

"[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted). Accordingly, we conclude Appellant's argument that the trial court failed to give adequate consideration to mitigating factors such as his age and ability to rehabilitate does not present a substantial question appropriate for our review. *See id.* However, "[t]his Court has recognized that a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." *Commonwealth v. Crork*, 966 A.2d 585, 590 (Pa. Super. 2009), *appeal denied*, 981 A.2d 217 (Pa. 2009) (citation omitted). Therefore, we turn to

- 16 -

the merits of Appellant's claim that his sentence is excessive because the court impermissibly relied on his lack of remorse.

"[I]t is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." ***Commonwealth v. Bowen***, 975 A.2d 1120, 1125 (Pa. Super. 2009) (citation omitted).

Here, at the sentencing hearing, the court heard a victim impact statement and argument from both parties, and it acknowledged the content of the PSI report. (***See*** N.T. Sentencing, 11/22/13, at 3-10). It explained its rationale for the sentence as follows:

> . . . I have given this considerable thought since the day of your trial. While it wasn't a long trial[,] it was very involved [] and I was taken by the fact I was never involved in a homicide trial where the defendant had as much support throughout the trial as you did. . . . [E]very day you had 5 to 6 to 7 people come here on your behalf. That speaks volumes for you. I don't think that you are without value. I think you can be rehabilitated but in the absence of your admission to this crime I'm going to be forced, anything less than 20 to 40 years would not be warranted. You are convicted of a drug killing in the City of Easton. The evidence was clear that you knew of a transaction by another individual in your turf and you killed that person. I don't see any possible way for me to impose anything but the maximum sentence given those facts . . . . Had there been any other redeeming factors here other than I don't take that lightly with his family support, I watched him through this trial and his respectful demeanor and the way he comported himself, but without—he has not taken blame for this yet. He professes his innocence and I understand that. But based on the evidence before me I have a drug killing that occurred, it was deliberate, in the City of Easton, Northampton County,

Pennsylvania. The taxpayers of this county will be outraged if I don't impose the maximum sentence. And I believe the maximum sentence is warranted here based on these facts.

(***Id.*** at 11-12).

Thus, the record reflects that the trial court did not justify its statutory maximum sentence based solely on Appellant's lack of remorse. Rather, the court considered this factor as one of numerous sentencing factors, and it specifically acknowledged Appellant's right to maintain his innocence. The court's comments at sentencing indicate that, after observing Appellant throughout the trial, it considered his lack of remorse "in relation to protection of the public, the gravity of the offense, and [his] rehabilitative needs." ***Bowen***, ***supra*** at 1125. Accordingly, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence. ***See*** ***Clarke***, ***supra*** at 1287. Appellant's final issue on appeal does not merit relief.[6]

Judgment of sentence affirmed.

---

[6] We note that a review of the record belies Appellant's claim that the trial court failed to consider mitigating circumstances such as his age and ability for rehabilitation. (***See*** Appellant's Brief, at 46). The court specifically took note of Appellant's young age and his capacity for rehabilitation. (***See*** N.T. Sentencing, 11/22/13, at 9, 11). Further, because the court reviewed a PSI report, "we can assume [it] was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Rhoades*** 8 A.3d 912, 919 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, 132 S. Ct. 1746 (2012) (citation and internal quotation marks omitted). Therefore, even if we were to determine that Appellant's claim did raise a substantial question, we would find no merit to it.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2015