J-S39023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NICHOLAS LEE CLUGSTON | : | |
| Appellant | : | No. 169 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 27, 2021
In the Court of Common Pleas of Juniata County Criminal Division at
No(s): CP-34-CR-0000021-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NICHOLAS LEE CLUGSTON | : | |
| Appellant | : | No. 170 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 27, 2021
In the Court of Common Pleas of Juniata County Criminal Division at
No(s): CP-34-CR-0000122-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: MARCH 21, 2023**

Appellant, Nicholas Lee Clugston, appeals from the judgments of sentence of an aggregate term of four to ten years' incarceration imposed following his convictions for, *inter alia*, access device fraud and receipt of stolen property.  We affirm.

The facts are straightforward.  On November 27, 2019, Collin Smith received an alert from his bank that his debit card was involved in suspicious

activity. Smith realized that his debit card was missing and checked his bank records. He noticed two unauthorized purchases on November 27: one from a Rutter's convenience store at 6:55 p.m., and the other from a Sheetz convenience store at 10:14 p.m. Smith called the Pennsylvania State Police and spoke to Trooper Zebulin Evans. Smith testified that he did not authorize Appellant or anyone else to make these purchases.

Chelsea Hosler testified that her car was broken into and her wallet was taken.[1] Hosler received a text message from her bank reporting suspicious activity; specifically, that her card was being used at 3:03 a.m. at the Mifflintown Mart. Hosler did not authorize anyone to make this purchase.

Trooper Evans testified that he spoke to Smith on November 27, 2019. Based on that information, he proceeded to the Rutter's store. The employees permitted Trooper Evans to examine their video surveillance. He determined that around the time of the reported transaction a silver, dual-wheeled diesel truck entered the parking lot. A male is seen exiting the passenger side of the vehicle and making purchases in the store. The male is then seen reentering the passenger side of the vehicle.

Trooper Evans took images of the truck and met with Trooper Cody Booher. The two men were able to determine that the vehicle was an early 2000s Chevrolet diesel truck. The two separated. Shortly thereafter, Trooper Booher radioed Trooper Evans to report a sighting of a vehicle matching the

---

[1] Ms. Hosler was not certain of the date, testifying it occurred a day or two before Thanksgiving, which fell on November 28, 2019.

description. He effectuated a traffic stop and spoke with the driver, later identified as Appellant. During the interaction, Appellant told Trooper Booher that he did not have any identification and gave the name John Clugston, who is Appellant's brother. Trooper Booher saw cartons of cigarettes and a debit card in the center console. The name on the card was Collin Smith. Appellant informed him that the card may have belonged to a friend of his by the name of John Mosser. Trooper Booher took the card and radioed Trooper Evans, who confirmed that Collin Smith was one of the victims and agreed to meet Trooper Booher. Trooper Evans arrived, and as the two approached Appellant's vehicle, Appellant sped off at a high rate of speed and a police pursuit commenced. The chase lasted almost one hour, and Appellant struck several police vehicles during the chase. Eventually, Trooper Booher was able to initiate a PIT (precision immobilization technique), causing Appellant's vehicle to travel down an embankment and into a field. Appellant fled the scene on foot and was not apprehended that evening.

Troopers recovered a bag inside the vehicle with Appellant's name on the tag. Trooper Booher obtained Appellant's driver's license photograph and confirmed that he was the driver. Trooper Evans also recovered from the vehicle an additional card belonging to Smith, as well as Hosler's bank card and her wallet. The cigarettes were determined to have been purchased during one of the fraudulent transactions.

Appellant was thereafter charged at the above-captioned dockets. At docket CP-34-CR-21-2020, Appellant was charged with thirty-eight counts, all

of which related to the police chase.  Appellant does not raise any challenges to his convictions at that docket.   At docket CP-34-CR-0000122-2020, Appellant was charged with two counts of access device fraud, 18 Pa.C.S. § 4106(a)(3), and two counts of receipt of stolen property, 18 Pa.C.S. § 3925(a).   This consolidated appeal exclusively challenges those four convictions.

The matters were consolidated for trial and Appellant was found guilty of several charges, including the four convictions at issue here, following a jury trial held on March 22, 2021.  Appellant was sentenced on May 27, 2021. At each count of access device fraud, Appellant received a sentence of 6 to 12 months of incarceration, set consecutively to each other and consecutive to the other docket.  The trial court determined that the receipt of stolen property charges merged with the access device fraud charges.  Appellant filed a timely notice of appeal at each docket, and we consolidated the appeals.   Appellant raises two issues for our review:

> 1. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of access device fraud where the Commonwealth failed to establish that Appellant possessed an access device knowing that it belonged to another person?
>
> 2. Was the evidence at trial insufficient to prove beyond a reasonable doubt that Appellant committed the crime of receiving stolen property where the Commonwealth failed to establish that Appellant intentionally retained a debit card knowing it had been stolen or believing it had probably been stolen?

Appellant's Brief at 10.

Each claim challenges the sufficiency of the evidence to convict. Our standard of review is well-settled:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the [fact-finder] to find every element of a crime beyond a reasonable doubt.

***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015) (citations and quotation marks omitted). We must determine whether the evidence admitted, and all reasonable inferences drawn from that evidence, support the elements of the offenses beyond a reasonable doubt. ***Commonwealth. v. Woodard***, 129 A.3d 480, 490 (Pa. 2015). The Commonwealth may sustain its burden by wholly circumstantial evidence. ***Commonwealth v. Spell***, 28 A.3d 1274, 1278 (Pa. 2011). "The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Aguado***, 760 A.2d 1181, 1185 (Pa. Super. 2000).

Beginning with the access device fraud charges, Appellant was convicted of violating 18 Pa.C.S. § 4106(a)(3), which requires the Commonwealth to establish that the actor "possess[ed] an access device knowing that it is counterfeit, altered, incomplete or belongs to another person who has not

authorized its possession." The statute defines "access device" to include the credit/debit cards at issue here.

Appellant challenges the element of possession and directs our attention to **Commonwealth v. Ballard**, 244 A.3d 815 (Pa. Super. 2020), a case that, like this one, involves a conviction for access device fraud where direct proof that the defendant used the access devices was lacking. In **Ballard**, a store manager observed suspicious activity at the store's gas pumps. Specifically, he saw an individual, known from previous encounters, pumping gas into two vehicles, a black SUV and a tan SUV. The manager knew that this individual had previously used multiple cards to pump gas into multiple cars. This individual was not the appellant.

A police officer responded and stopped the respective drivers of the two SUVs, Todd Williams and Michael Hawkins. The officer asked both men if they had any credit cards in their possession, and they each turned over several cards that were later determined to be fraudulent. Hawkins allowed the officer to search his vehicle, where the appellant was seated. The appellant turned over five credit cards that the officer determined, via a credit card reader, were fraudulent. The officer acknowledged that the appellant was not seen pumping gas or using any of the credit cards.

The **Ballard** decision is significant largely for its analysis of what constitutes an "access device." The appellant in **Ballard** argued that the Commonwealth failed to present sufficient evidence that the cards in question were capable of being used. **See id.** at 819 n.2 (explaining that the appellant

conceded the Commonwealth is not required to show actual use of the cards but claimed that "that the statute's plain text requires that the prosecution establish only that the card he possessed had the capability to do so") (citing brief). We disagreed, explaining that the statute does not require proof that the access device "be actually or technologically capable of working" and that the plain meaning of "can be used" simply means that the item could possibly be used. *Id*. at 820. We noted that a contrary interpretation would produce absurd results, as an individual who managed to cancel or deactivate a stolen access device would thereby "absolv[e] defendants who happen to have stolen from a prudent card-holder." *Id.*

Appellant argues that this case is unlike *Ballard* in that he did not possess the access devices on his person. "Rather, [Appellant] merely complied with a request by police that he hand them the debit card" located in the vehicle's console, which was "a communal space available to any occupant of the vehicle, past or present." Appellant's Brief at 21. In this regard, Appellant suggests that the surveillance video which showed an individual exiting Appellant's passenger side establishes that the passenger is the guilty party.

We agree that *Ballard* is distinguishable in terms of actual possession. But this is of no help to Appellant as the Commonwealth may establish the element of possession via constructive possession.

> This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215

(Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). **See also Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." **Hopkins**, **supra** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." **Id.** (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." **Id.** (citation and quotation omitted).

**Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018). Constructive possession may be proved by circumstantial evidence. **Id.** at 37.

Appellant's brief does not discuss constructive possession. He does, however, reference the concept by claiming "he was merely present in a vehicle in which a debit card was in an open common area of the vehicle." Appellant's Brief at 22. It is true that mere presence is insufficient to establish constructive possession. **Parrish**, 191 A.3d at 37. However, the Commonwealth may prove the elements of constructive possession via a totality of the circumstances. In this regard, Appellant fails to address the significant circumstantial evidence of guilt. First, Appellant's vehicle contained Hosler's wallet in addition to the access devices. To the extent that the evidence suggests a second actor may have been involved, the fact that an item that was stolen from Hosler's vehicle was in his presence suggests that

Appellant was a participant in any joint scheme. Second, and relatedly, authorities found cigarettes inside Appellant's vehicle that were purchased during the fraudulent transactions reported by the victims. Again, as a matter of circumstantial proof, the proceeds being present in the vehicle where Appellant is the sole occupant is powerful evidence. Finally, Appellant diminishes the inferences that may be drawn from his flight and evasive behavior. In *Commonwealth v. Cruz*, 21 A.3d 1247 (Pa. Super. 2011), this Court addressed whether the Commonwealth established constructive possession of a firearm located in a compartment on the passenger side of a vehicle. Like here, the appellant in *Cruz* was the sole person in the vehicle. We stated:

> [The a]ppellant was the only person found in the vehicle. The gun in question was found in a compartment on the passenger side of the vehicle. Officer Doyle testified that [the] appellant was observed moving sideways toward the passenger side of the vehicle immediately after Officer Doyle turned on his lights and siren. During questioning, [the] appellant gave Officer Doyle five or six different names and multiple birthdates, thus exhibiting a consciousness of guilt. Under these circumstances, we think the trial court was justified in concluding that [the] appellant had knowledge of the gun, had the power and intent to exercise control of the gun, and, therefore, had constructive possession of the gun….
>
> Instantly, [the] appellant was the only person in the vehicle, he was seen moving toward where the gun was found as soon as he was aware that he was being stopped, and he exhibited a marked consciousness of guilt. We find that the evidence at trial was sufficient to find constructive possession.

*Id.* at 1253.

The evidence of flight and the corresponding strength of the inference regarding guilty knowledge is much stronger here. In addition to giving the name of his brother during the traffic stop, Appellant led officers on a chase that lasted almost one hour. These actions are highly suggestive of consciousness of guilt.[2] We therefore conclude that the Commonwealth met its burden.

Turning to the sufficiency of the evidence to convict Appellant of receipt of stolen property, much of our foregoing analysis applies. To establish that crime, the Commonwealth must establish that Appellant "(1) intentionally acquir[ed] possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa. Super. 2022) (quoting *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (*en banc*)).

Appellant challenges the second element, often referred to as "guilty knowledge" of the crime. *Commonwealth v. Gomez*, 224 A.3d 1095, 1099 (Pa. Super. 2019). To prove that Appellant knew the property in his possession was stolen or believed it was probably stolen, the Commonwealth

---

[2] Appellant also avers that the Commonwealth failed to establish that he knew the access devices belonged to persons who did not authorize his possession. This assertion is essentially duplicative of the claim that the Commonwealth failed to establish the elements of receipt of stolen property, and the circumstantial evidence cited therein equally applies to that aspect of his access device fraud charges.

may rely on circumstantial evidence, including the lack of an explanation for possessing recently stolen goods. *Id.* at 1100.

> Circumstances that can establish the requisite knowledge on the part of the defendant include: a short time between the theft and defendant's possession; the defendant's conduct at arrest and while in possession of the stolen property; the type of property; the location of the theft in comparison to the location where the defendant gained possession; the value of the property compared to the price paid for it; and the quantity of the stolen property.

*Commonwealth v. Marrero*, 914 A.2d 870, 873 (Pa. Super. 2006) (citation omitted).

Just as mere presence is not enough to establish constructive possession, the mere possession of property that is stolen is likewise insufficient. *Id.* However, "guilty knowledge may be inferred from unexplained, or unsatisfactorily explained, possession of recently stolen goods." *Id.* (quoting *Commonwealth v. Bowens*, 265 A.3d 730, 745-46 (Pa. Super. 2021) (*en banc*)).

As with our analysis of constructive possession, the circumstantial evidence justifies the inference that Appellant believed that the access devices were probably stolen. His flight from a routine traffic stop makes little sense otherwise. Furthermore, the nature of the access device cards themselves is significant. Appellant possessed a card bearing Smith's name. While we are required to view the evidence in the light most favorable to the Commonwealth, even viewing the evidence in the light most favorable to Appellant illustrates that his flight makes no sense. If Appellant truly believed that his friend had left the card in his possession, the logical question would

be why Mosser had a card belonging to someone else. The obvious and logical inference is that Appellant had guilty knowledge and responded by trying to flee. The circumstantial evidence was sufficient to establish Appellant's guilty knowledge, and no relief is due.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023