**In re Last Will and Testament of John L. QUIGLEY.**

**No. 2010–64–Appeal.**

Supreme Court of Rhode Island.

June 24, 2011.

Craig A. Quigley, Pro Se.

Steven E. Snow, Esq., Providence, for Appellee (Bank of America).

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON for the Court.

The appellant, Craig A. Quigley, appeals *pro se* from an order of the Superior Court denying his motion to vacate a previous order of that court pursuant to which there was a reformation of the terms of a testamentary trust under which he was a bene-

ficiary. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments, we are satisfied that cause has not been shown and that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## I

### Facts and Travel

The facts relevant to this appeal are as follows. In 1979, appellant's father, John L. Quigley, executed a will which established a testamentary trust for the benefit of his wife, Jacqueline Quigley, and his five children, including appellant Craig A. Quigley.[1] John subsequently executed three codicils to his will. John died on March 9, 1981, and the will was thereafter admitted to probate by the East Greenwich Probate Court.

On May 23, 2003, the trustees designated under the will, Fleet National Bank (Fleet)[2] and attorney Edward Goldin, filed a miscellaneous petition in the Superior Court for Kent County. The petition requested that the court issue an order which would: (1) allow certain trustee accounts; (2) authorize payment of Fleet's fees and expenses; (3) approve the resignation of the trustees and appoint a successor trustee; and, of particular relevance to the instant appeal, (4) reform the trust.

---

1. For the sake of clarity, we shall hereinafter refer to the members of the Quigley family by their first names. We certainly intend no disrespect.

2. John's will designated Rhode Island Hospital Trust National Bank as the corporate trustee of the trust; Fleet National Bank became the successor trustee as the result of a merger with Rhode Island Hospital Trust National Bank.

With respect to the request for reformation of the trust, the trustees noted that the terms of the trust as contained in John's will provided (1) that the trust would pay income to Jacqueline for life; *and* (2) that, as each child attained the age of twenty-five, he or she would be paid his or her *pro rata* share of the residuary trust estate as it was then constituted. The trustees stated that they "believe[d] that the decedent's intent was that the Trust should distribute on the *latter* of the death of the wife *or* the children attaining the age of twenty-five years." (Emphasis added.) Accordingly, the trustees requested that the trust be reformed by adding an amended paragraph to the will that reads as follows:

> "Upon the latter of the decease of my wife, or as each child of mine shall attain age of twenty-five (25), he or she shall be paid, free of trust, his or her pro-rata share of the residuary trust estate as it is then constituted. * * *."

Notably, several exhibits were attached to the trustees' May 23, 2003 petition, including two forms (entitled "Exhibit C" and "Exhibit E") that were signed by Jacqueline, by Craig, and by Craig's siblings, whereby each of them specifically consented to the resignation of the trustees and to the appointment of a successor trustee.

In response to the trustees' petition, on May 29, 2003, an attorney representing Craig and the other Quigley children and a different attorney representing Jacqueline together filed a miscellaneous petition. The Quigleys' petition requested that, upon the granting of the trustees' petition, funds be distributed from the trust to Jacqueline to reimburse her for expenses incurred on behalf of the children; the petition also requested the payment of certain attorneys' fees.

On June 6, 2003, a hearing was held before a justice of the Superior Court with respect to the two above-referenced petitions. At that hearing, two attorneys appeared—one on behalf of Fleet and one on behalf of the Quigley children. Fleet's attorney indicated to the hearing justice that all of the interested parties had been notified of the requests set forth in the trustees' petition and that those interested parties had agreed to said requests. Jonathan Kalander, the attorney representing the Quigley children, then stated that all parties had also agreed to the requests in his petition regarding the distribution of trust funds to Jacqueline and the payment of attorneys' fees.

Later on June 6, 2003, after the hearing was concluded, the hearing justice entered separate orders granting both petitions. The order granting the trustees' petition specifically stated that it was "ordered * * * [t]hat the [c]ourt reform the Trust as set forth in the Petition." It also stated that the trustees, the successor trustee, and the decedent's wife and children were "the only necessary parties" to the proceeding; and it further stated that "prior notice of this proceeding, evidenced by the consent of the necessary parties attached to the Petition and the participation of counsel for the necessary parties at the proceeding, is proper and appropriate."

More than six years later, on November 16, 2009, Craig filed a motion to vacate the June 6, 2003 order granting the petition to reform the trust. Bank of America, which by that time had succeeded Fleet as the corporate trustee, filed an objection to Craig's motion.[3]

---

3. The record indicates that, on July 9, 2008, Craig and three of his siblings had filed a "petition to vacate" the portion of the June 6, 2003 order which granted the reformation of the trust. However, it does not appear that a

On December 11, 2009, a hearing was held before a justice of the Superior Court with respect to Craig's motion.[4] At the hearing, Craig's counsel argued that the June 6, 2003 order should be vacated pursuant to Rule 60 of the Superior Court Rules of Civil Procedure because, *inter alia*, the order was purportedly "void." Craig's attorney asserted (1) that the Superior Court had never obtained "jurisdiction" over Craig because there had never been service of process with respect to the May 23, 2003 petition and (2) that, as a result, any "judgment" against him was "void."

In support of his assertion, counsel stated that Craig had not been served with a copy of the trustees' miscellaneous petition requesting (*inter alia*) the reformation of the trust and that he had not been summoned to appear before the court. He further stated that the file did not contain a return of service with respect to the petition and that there was no stipulation "with respect to an acceptance of service of process." He also contended that "[n]o one spoke to [Craig] about the reformation," and he added that the reformation of the trust had not been addressed at the June 6, 2003 hearing and that the order concerning reformation that was issued as a result of the June 6 hearing "was not sent" to Craig. Further, although Craig's counsel acknowledged that attorney Kalander had attended the June 6, 2003 hearing and had advised the court that he was representing the Quigley children, Craig's counsel asserted that attorney Kalander's representation was "not valid;" he predi-

cated that conclusion on his assertion that there had been no service of process.

In response, counsel for Bank of America argued that, because the May 23, 2003 petition at issue was a miscellaneous petition with respect to a trust, there were no "defendants" involved in the case and that, therefore, formal service of process was not required. Counsel further contended that Craig nonetheless did have proper "notice" of the petition—because he had signed two of the exhibits that were attached to the petition. Counsel then pointed out that one of the two exhibits that Craig had signed consisted of a form in which Craig specifically consented to "the first and final account" of the trustees, and he contended that the "account" to which Craig consented in fact "incorporate[d] what was done by the reformation" because the account "showed there was no distribution to Craig Quigley when he turned 25 and instead his mother got income from the account." Counsel for the bank further argued that the Quigley children were represented by attorney Kalander and that he appeared on their behalf at the June 6, 2003 hearing on the petitions and indicated that he represented their interests; counsel also noted that attorney Kalander had at no point contended that the trust should not be reformed as requested.

At the hearing on December 11, 2009, Craig's counsel also argued that the order reforming the trust should be vacated pursuant to Rule 60(b)(6), which provides for vacation of an order for "any other reason justifying relief;"[5] he contended that the

---

hearing was ever held with respect to that July 2008 petition.

**4.** It should be noted that the hearing justice who considered Craig's motion to vacate was not the same hearing justice as had issued the June 6, 2003 order granting the petition to reform the trust.

**5.** The adjective "other" in the language from Rule 60(b)(6) of the Superior Court Rules of Civil Procedure that is quoted in the text differentiates the grounds for possible relief set forth in subsections (1) through (5) of Rule 60(b) from what is potentially available under Rule 60(b)(6).

order reforming the trust should be vacated because the terms of the will with respect to the testamentary trust were unambiguous. He argued that the trust should not have been reformed to provide income for life to Jacqueline because two of the codicils to the original will eliminated "any ambiguity in the trust" by removing the language in the original will which had stated that income was to be provided to her for life. He urged that, as a result, "the reformation was clearly against the wishes of the testator" and that Craig should have received his share of the estate when he turned twenty-five. In response, counsel for Bank of America argued that the will was ambiguous and that, if the will had been "applied as it was written," Jacqueline would have been "left destitute" because all remaining trust assets would have passed to the Quigley children. He asserted that the attorney who drafted the will did not believe such to have been John's intent and, accordingly, had been one of the petitioners seeking reformation of the trust.

At the conclusion of the hearing in December of 2009, the hearing justice ruled that there was insufficient evidence to justify vacating the June 6, 2003 order reforming the trust, and he denied Craig's motion to vacate. He stated that the evidence before him, when "balance[d]" with the statements made by the attorneys at the June 6, 2003 hearing (the record of which the December 2009 hearing justice reviewed) and the statements on the record by the justice who presided over the June 6, 2003 hearing, confirmed that everyone, including Craig, had appropriate notice with respect to the petition and the proceeding. On January 4, 2010, an order entered denying the motion to vacate, and Craig filed a timely notice of appeal.

On appeal, Craig argues that the hearing justice abused his discretion in denying the motion to vacate because the hearing justice rejected Craig's argument that he was not afforded sufficient notice of the proceeding that resulted in the 2003 order reforming the trust. Craig first argues that the hearing justice should have vacated the order pursuant to Rule 60(b)(4), which provides for the vacation of a judgment if it is "void." In the alternative, he argues that the hearing justice should have vacated the order pursuant to Rule 60(b)(6), which provides that an order may be vacated for "any other reason justifying relief." Finally, Craig argues that the order should have been vacated because he was "grossly misrepresented" by attorney Kalander in connection with the 2003 proceeding.

## II

### Standard of Review

 This Court reviews *de novo* an appeal from a denial of a motion to vacate a judgment where the motion is based on an allegation that the judgment is void pursuant to Rule 60(b)(4). *See Nisenzon v. Sadowski,* 689 A.2d 1037, 1047 (R.I. 1997); *see also Kildeer Realty v. Brewster Realty Corp.,* 826 A.2d 961, 965 (R.I.2003). Such a motion is not addressed to the discretion of the Superior Court justice because "[a] judgment is either valid or it is not and discretion plays no part in resolving the issue." *Nisenzon,* 689 A.2d at 1047 (internal quotation marks omitted); *see also Shannon v. Norman Block, Inc.,* 106 R.I. 124, 130, 256 A.2d 214, 218 (1969). As we have stated, "[i]f the judgment is void, the movant has an unqualified right to relief." *Shannon,* 106 R.I. at 131, 256 A.2d at 219; *see also Kildeer,* 826 A.2d at 965; *Nisenzon,* 689 A.2d at 1047. Accordingly, a Rule 60(b)(4) motion may be brought at any time. *See Flynn v. Al-Amir,* 811 A.2d 1146, 1150 n. 3 (R.I.2002) ("Time is inconsequential when considering

a void judgment. \* \* \* It matters not how, or in what way, or at what time the objection to its presence is brought to the court's attention.") (internal quotation marks omitted).

### III

### Analysis

On appeal, Craig first argues that the December 2009 hearing justice should have vacated the order pursuant to Rule 60(b)(4), which provides for the vacation of a judgment if it is "void." He contends that, because he did not receive a summons in accordance with Rule 4 of the Superior Court Rules of Civil Procedure, any judgment entered against him in the Superior Court proceeding with respect to the reformation of the trust was void and should have been vacated. He further contends that he was deprived of his right to due process and has "lost substantive rights" because he was not served with the petition for reformation of the trust.

In the alternative, Craig argues that the hearing justice should have vacated the order pursuant to Rule 60(b)(6), which provides that an order may be vacated for "any other reason justifying relief." First, he contends that the hearing justice improperly failed to address his argument that such relief was justified in his case because the will was unambiguous and that, therefore, the trustees' petition for reformation based on the will's alleged ambiguity should not have been granted. Next, citing this Court's opinion in *Labossiere v. Berstein*, 810 A.2d 210 (R.I.2002), Craig asserts that "other extraordinary and unusual factors" existed which warranted the granting of the motion to vacate under Rule 60(b)(6)—*viz.*, that he did not learn that his father's will provided that he and the other Quigley children were to receive their shares of the trust estate at age twenty-five until fourteen years after he reached such age.

Finally, Craig argues for the first time on appeal that the order should have been vacated because he was "grossly misrepresented" by attorney Kalander in connection with the 2003 proceeding. He alleges that he never authorized attorney Kalander to act on his behalf and that he "never saw or had knowledge of" the trustees' petition, including the request for reformation of the trust.

Bank of America counters that Craig was not named as a "defendant" in the instant action and that, therefore, a Rule 4 summons was not required. The bank contends that Craig was merely an "interested part[y]" and that, as such, he was simply entitled to notice of the proceeding at which the trustees' petition would be considered, which notice he in fact received as evidenced by his signature on the two consent forms attached to the petition and also by attorney Kalander's representation of Craig's interests during the proceeding. The bank further argues that, in the absence of any fraud, attorney Kalander's actions were binding on Craig, and it notes that Craig did not make any allegations of fraud at the hearing on his motion to vacate.

■ It is our view that Craig's first argument that the order reforming the trust is void and should be vacated pursuant to Rule 60(b)(4)—due to the fact that he never received service of process in accordance with Rule 4—is without merit. We have stated that "rules relating to service of process are to be followed and construed strictly since jurisdiction of the court over the person of a defendant is dependent upon proper service having been made." *Shannon*, 106 R.I. at 130, 256 A.2d at 218. However, it is our opinion that, because Craig was not a "defendant" in the proceeding with respect to the

petition for reformation of the trust, Rule 4 service of process was not required.

■ With respect to Craig's additional argument that the order was void under Rule 60(b)(4) because the lack of service of process violated his due process rights, we note that this Court has stated that relief is available under Rule 60(b)(4) when "the court's actions amounted to a plain usurpation of power constituting a violation of due process." *Labossiere,* 810 A.2d at 215 (internal quotation marks omitted); *see also Allstate Insurance Co. v. Lombardi,* 773 A.2d 864, 869 (R.I.2001). In the instant case, however, it is our unequivocal opinion that the court's actions did not constitute "a plain usurpation of power" violative of Craig's right to due process; this is so because Craig in fact had actual notice of the proceeding (albeit not by means of formal service of process) and, significantly, because Craig was represented by counsel at the proceeding.

First, we note that Craig had notice of the proceeding with respect to the trustees' May 23, 2003 petition because he signed two consent forms that were entitled "Exhibit C" and "Exhibit E," respectively. The two forms specifically consented to the resignation of the trustees, to "the First and Final Account filed by said Trustees," and to the appointment of a successor trustee as requested by the trustees' petition; and the signed consent forms were subsequently submitted to the Superior Court as exhibits to the petition. Although neither of the consent forms specifically addressed the request for reformation contained in the petition, they put Craig on notice that a petition by the trustees was being filed for consideration by the Superior Court; further, Craig's signature on the two "Exhibit" forms meant that the court could presume that he was familiar with the contents of the petition to which the signed exhibits were attached. *See generally Manchester v. Pereira,* 926 A.2d 1005, 1012 (R.I.2007) ("[I]t has long been a settled principle that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.") (internal quotation marks omitted); *see also Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island,* 18 A.3d 495, 498–99 (R.I.2011); *Shappy v. Downcity Capital Partners, Ltd.,* 973 A.2d 40, 46 (R.I.2009); *Murray v. Cunard S.S. Co.,* 235 N.Y. 162, 139 N.E. 226, 228 (1923) (Cardozo, J.) (stating that one "who omits to read takes the risk of the omission").

Next, and very importantly, the record includes a "certificate of service" in which attorney Kalander certified that on May 28, 2003, he mailed to Craig and to the other Quigley children a copy of the petition that he filed in the Superior Court on May 29, 2003 in response to the trustees' petition. The petition that was the subject of that certification stated that attorney Kalander represented Craig and the other Quigley children, and it stated that attorney Kalander was asking the court to grant his petition "upon the granting of Fleet National Bank's * * * Petition for Allowance of Account * * * *and Reformation of Trust,*" thereby putting Craig on express notice that the trustees' petition involved a reformation of the trust. (Emphasis added.)

Attorney Kalander thereafter proceeded to represent Craig at the June 6, 2003 hearing concerning both petitions, and he did not object to the provision in the trustees' petition requesting a reformation of the trust. As a result, the hearing justice who presided over the June 6, 2003 hearing specifically found that "prior notice of this proceeding, evidenced by the consent of the necessary parties attached to the

Petition and the participation of counsel for the necessary parties at the proceeding, [was] proper and appropriate."

■ We have stated that an attorney is authorized to take such steps "as he [or she] deems legal, proper and necessary" in the representation of his client, "and his [or her] acts, in the absence of fraud, are binding on the client." *C.C. Plumb Mixes, Inc. v. Stone*, 108 R.I. 75, 76, 272 A.2d 152, 154 (1971). It is noteworthy that Craig did not make a claim in the Superior Court alleging fraud on the part of attorney Kalander with respect to the attorney's representation of him in the 2003 proceeding. Further, Craig never raised before the Superior Court the additional argument that he now makes on appeal to the effect that he was "grossly misrepresented" by attorney Kalander; rather, he argued that the attorney's representation was "void" because he (Craig) had not been served with a copy of the trustees' petition. The argument about gross misrepresentation has therefore been waived. *See Resendes v. Brown*, 966 A.2d 1249, 1254 (R.I.2009) (stating that "this Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial"); *Pollard v. Acer Group*, 870 A.2d 429, 432 (R.I.2005).

Accordingly, it is our opinion that the hearing justice did not err in finding that Craig received sufficient notice with respect to the June 6, 2003 proceeding concerning the trustees' petition. It is consequently our opinion that the June 6, 2003 order of the Superior Court was not void because of a lack of *in personam* jurisdiction—or otherwise.

■ We now turn to Craig's additional argument that the June 6, 2003 order should have been vacated pursuant to Rule 60(b)(6), which provides that a court may vacate a judgment or order "for any other reason justifying relief from the operation of the judgment [or order]." As a threshold matter, we note that a motion under Rule 60(b)(6) must be made *"within a reasonable time"* after the rendering of the judgment from which a party seeks relief. (Emphasis added.) Such is the criterion set forth in Rule 60(b) concerning the time within which Rule 60(b)(6) motions "shall" be filed. *See Flynn*, 811 A.2d at 1150.[6]

For the purpose of determining whether the Rule 60(b) motion in this case was made within a reasonable time, certain decisions of the federal courts provide useful guidance. *See Allen v. South County Hospital*, 945 A.2d 289, 293 (R.I.2008) ("Our Rule 60(b) is nearly identical to Rule 60(b) of the Federal Rules of Civil Procedure, and, as a result, we find federal cases interpreting this rule to be instructive."); *see also Hall v. Insurance Co. of North America*, 727 A.2d 667, 669 (R.I.1999).

In *Farm Credit Bank of Baltimore v. Ferrera–Goitia*, 316 F.3d 62, 66 (1st Cir. 2003), the United States Court of Appeals for the First Circuit observed that the federal equivalent of our Rule 60(b) "seeks to balance the importance of finality against the desirability of resolving disputes on the merits." In the just-cited opinion, the First Circuit further indicated that, although motions made pursuant to Rule 60(b)(6) "need only be made within a reasonable time," what is reasonable "depends upon the circumstances of the par-

---

**6.** Although the parties in the case at bar have not specifically addressed the issue of whether Craig's Rule 60(b)(6) motion was brought within a reasonable time, this Court is "free to affirm on grounds other than those relied on by the trial justice." *See Shepard v. Harleysville Worcester Insurance Co.*, 944 A.2d 167, 170 (R.I.2008); *see also, e.g., State v. Barkmeyer*, 949 A.2d 984, 998 n. 12 (R.I. 2008).

ticular case." *Farm Credit Bank of Baltimore,* 316 F.3d at 66; *see also Nucor Corp. v. Nebraska Public Power District,* 999 F.2d 372, 374 (8th Cir.1993) ("What constitutes a 'reasonable time' under Rule 60(b) is dependant on the facts of each case * * *."); 12 *Moore's Federal Practice,* § 60.65[1] (Matthew Bender 3d ed. 2011). The First Circuit has further stated that "[t]he circumstances to be considered include the length of the delay, the justification for it, and the prejudice (if any) associated with the granting of relief." *Farm Credit Bank of Baltimore,* 316 F.3d at 66.

In the case at bar, Craig waited until November 16, 2009 to file his motion to vacate the June 6, 2003 order that allowed reformation of the trust in such a way as to benefit Craig's mother. On the basis of simple arithmetical calculations (*see* footnote 7, *infra*), it is clear that Craig's motion to vacate was filed more than two years after June of 2007—*i.e.,* the point in time when (according to his representations to this Court) Craig first "realized" that he should have received his share of the trust estate when he reached the age of twenty-five and that, in his words, "his father's intentions had not been followed." [7] Further, at the time Craig filed his motion to vacate, more than six years had elapsed since the Superior Court hearing with respect to the trustees' petition and since the resulting order entered, despite the fact that Craig had notice in 2003 that the petition had been filed.

Under the circumstances that the record in this case reflects, we deem the passage of time before Craig filed his motion to vacate pursuant to Rule 60(b)(6) to have been clearly unreasonable. *See Farm Credit Bank of Baltimore,* 316 F.3d at 65–67 (holding that a Rule 60(b) motion was not made within a reasonable time when two and a half years had passed since the entry of an order against the movants, when they were aware of the action against them and therefore could offer "no plausible justification for their dilatoriness"); *see also* Mary Kay Kane, *Relief from Federal Judgments: A Morass Unrelieved by a Rule,* 30 Hastings L.J. 41, 49 (1978) ("The court will be influenced significantly by whether the motion was made as soon as the grounds for relief were discovered, or with reasonable diligence thereafter, or whether the movant has an excuse for the delay."). It is also our view that, in the context of such an intra-family dispute that does not involve enormous sums of money, delay of such a magnitude is inherently prejudicial to the other family members. *Cf. Arena v. City of Providence,* 919 A.2d 379, 396 n. 13 (R.I.2007) ("Given the egregious length of the delay in the instant case, presuming prejudice to defendants gives us no pause.") (internal quotation marks omitted).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the order of the Superior Court. The record in this case may be returned to that tribunal.

---

7. In his brief to this Court, Craig states that he turned twenty-five years of age on June 27, 1993, and he alleges that he "only realized approximately fourteen (14) years after he was entitled to receive a disbursement from the Trust Estate, that his father's intentions had not been followed." We therefore infer that the point in time when his realization took place would have been approximately in June of 2007.