J-S38040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILEY GAMBREL | : | |
| | : | |
| Appellant | : | No. 719 WDA 2021 |

Appeal from the PCRA Order Entered January 5, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001777-2017

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: July 26, 2022**

Appellant, Wiley Gambrel, appeals from the order denying his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] While this appeal was pending, Appellant filed a *pro se* "Motion for Remand for Ineffective Assistance," in which he requested that this Court remand to allow him to assert ineffectiveness claims against his prior PCRA counsel in the PCRA court.  ***See Commonwealth v. Bradley***, 261 A.3d 381, 401 (Pa. 2021) (adopting "a modified and flexible [] approach" with respect to PCRA counsel ineffective assistance of counsel claims and holding that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").  However, because Appellant's substitute PCRA counsel, Mark M. Mehalov, Esquire, had already appeared in this Court at the time Appellant filed his *pro se* motion, we entered an order on June 23, 2022 finding that the motion was an impermissible filing under the rule against hybrid representation, ***see Commonwealth v. Jette***, 23 A.3d 1032, 1036 (Pa. 2011), and referring the motion to the consideration of Attorney Mehalov.

This Court previously summarized the factual history of this matter:

On July 17, 2017, [Appellant] went to the residence of James Plance (hereinafter Victim) and his girlfriend, Deana Hughes located at 280 Ringer Road, Georges Township, Fayette County Pennsylvania. Once at the residence, the three individuals began to imbibe alcohol and use crack cocaine. The individuals continued indulging in these activities until the early morning hours of July 18, 2017.

Hughes testified that in the early hours of July 18, 2017, Victim and Hughes were in the kitchen of the residence while [Appellant] was outside at his van; Hughes stated that [Appellant] walked in with a firearm and pointed it at Victim. [Appellant] allegedly shot Victim once in the head; then Hughes and [Appellant] wrapped the corpse in a tarp, put it in a box and transported the corpse to [Appellant's] garage located at 3540 Morgantown Road, Georges Township, Fayette County Pennsylvania. [Appellant] and Hughes then returned to the residence and attempted to clean up Victim's blood that was left in the kitchen. After the attempted cleaning, Hughes asked to be taken to her aunt's residence and [Appellant] complied. Once at her aunt's residence, the police were contacted and informed of the events that transpired.

After his apprehension, [Appellant] was transported to the Uniontown State Police Barracks and taken into an interview room for the purposes of questioning. [Appellant] was read his **Miranda**[3] rights at 14:18 on July 18, 2017, and at this time, he requested a lawyer. Trooper Sizer then asked [Appellant] preliminary questions as well as public safety questions, such as, where the firearm was located. [Appellant] indicated that the firearm was in his van. [Appellant] was then escorted from the interview room and made aware of possible charges against him; at this point, [Appellant] changed his mind and decided that he wished to waive his right to an attorney. [Appellant] was then re-read his **Miranda** rights at 14:30, at that time he signed the waiver for said rights and began talking to Troopers Sizer and Mrosko where he made a full, detailed, confession where he admitted that he shot the Victim.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

***Commonwealth v. Gambrel***, No. 1228 WDA 2018, 2019 WL 2526157, at *1 (Pa. Super. filed June 19, 2019) (unpublished memorandum).

Appellant was charged with general criminal homicide[4] and related charges. Appellant filed an omnibus pre-trial motion in which he, *inter alia*, requested that the trial court suppress a statement he made to Corporal Thomas Ulintz of the Pennsylvania State Police. A hearing was held on the omnibus pre-trial motion on March 13, 2018. On April 12, 2018, the trial court entered an order denying the omnibus pre-trial motion to the extent it sought the suppression of the statement to Corporal Ulintz.

A jury trial commenced on July 9, 2018. Appellant was represented by Michael Aubele, Esquire at trial and on direct appeal. On July 16, 2018, the jury convicted Appellant of third-degree murder, abuse of a corpse, tampering with or fabricating physical evidence, and person not to possess a firearm.[5] On July 18, 2018, the trial court sentenced Appellant to an aggregate term of imprisonment of 24 to 48 years.

Appellant filed a timely direct appeal. On June 19, 2019, this Court affirmed the judgment of sentence. Appellant filed a *pro se* petition for allowance of appeal, which our Supreme Court denied on January 7, 2020.

---

[4] 18 Pa.C.S. § 2501(a).

[5] 18 Pa.C.S. §§ 2502(c), 5510, 4910(1), and 6105(a)(1), respectively.

Appellant filed a timely, *pro se* PCRA petition on March 4, 2020.[6] The PCRA court appointed counsel to represent Appellant, and PCRA counsel thereafter filed an amended petition on April 17, 2020. The PCRA court held a hearing on the petition on September 30, 2020. On January 5, 2021, the PCRA court filed an order denying the petition. Appellant thereafter filed this appeal.[7]

Appellant raises the following issues on appeal:

1. Whether Appellant's legal counsel, Michael Aubele, Esq., was ineffective for failing to develop the argument that Appellant fabricated his police statement because he believed he had cancer?

2. Whether Attorney Aubele was ineffective for failing to object to hearsay statements made by Christina Rohaley?

3. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denial to suppress Appellant's statement to Corporal Thomas Ulintz?

_____

[6] Appellant's PCRA petition was timely as it was filed prior to the deadline by which he could have challenged his conviction in the United States Supreme Court by filing a petition for writ of *certiorari*. **See** 42 Pa.C.S. § 9545(b)(1), (3) (PCRA petition must be timely filed within one year of date judgment becomes final, which occurs at the expiration of time for seeking discretionary review in the Supreme Court of Pennsylvania or the Supreme Court of the United States); U.S.Sup.Ct.R. 13 (petition for writ of *certiorari* must be filed within 90 days of judgment).

[7] Appellant did not file his appeal within 30 days as required by Pa.R.A.P. 903(a), but he instead filed a motion for permission to file an appeal *nunc pro tunc* on June 14, 2021. The PCRA court granted this motion. Appellant filed a concise statement of errors complained of on appeal concurrently with his notice of appeal. On June 30, 2021, the PCRA court issued a statement pursuant to Pa.R.A.P. 1925(a) that it was relying on its January 5, 2021 opinion accompanying its order denying Appellant's petition.

4. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denial of the objection that various photographs were more prejudicial than probative?

5. Whether Attorney Aubele was ineffective for failing to appeal the trial court's ruling that Appellant could not publish certain photographs of the basement of the residence where the shooting occurred?

6. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denying the objection that the District Attorney's questioning of the Appellant about the two shot guns constitute facts not in evidence?

7. Whether Attorney Aubele was ineffective for causing the Appellant to tell the jury that he was being housed in the Fayette County Prison?

Appellant's Brief at 3 (unnecessary capitalization omitted).

We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and its legal conclusions are free of error. *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020). When supported by the record, the PCRA court's factual findings and credibility determinations are binding on this Court, but we review the lower court's legal conclusions under a *de novo* standard of review. *Id.* Our scope of review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. *Id.*

Appellant's issues in this appeal are based upon the alleged ineffectiveness of his trial counsel. In assessing a claim of ineffective assistance under the PCRA, we begin our analysis with the presumption that counsel has rendered effective assistance. *Commonwealth v. Reid*, 259

A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Id.* (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. *Id.*

Appellant first argues that Attorney Aubele was ineffective for failing to develop the argument that Appellant fabricated his police confession to protect Hughes—who he claimed to be the real shooter—from prosecution because he believed at the time that he had cancer and did not have long to live. While Appellant acknowledges that Attorney Aubele mentioned the cancer diagnosis during trial, Appellant contends that his trial counsel was ineffective by "fail[ing] to repeatedly set forth this claim during the trial." Appellant's Brief at 14. Appellant asserts that there was no reasonable basis for counsel's decision to raise the issue repeatedly throughout the course of the trial and that this failure prejudiced him as it was the central claim of his defense.

The PCRA court determined that this claim lacked arguable merit because Attorney Aubele did in fact raise this issue during his examination of Appellant and in his closing. PCRA Court Opinion, 1/5/21, at 4. The record supports the PCRA court's conclusion. As Attorney Aubele explained at the PCRA hearing:

[O]ne of our defense strategies was that he had thought he was dying, he was much older than [Hughes] and that [] his thinking was that he was going to cover for her in order to give her an opportunity to live the rest of her life because he thought that his was short lived.

N.T., 9/30/20, at 11.

After jury selection, Attorney Aubele made a motion *in limine* to allow Appellant to testify regarding his belief that he had cancer—in spite of the fact that he had never been diagnosed or treated for cancer—to further the defense that his confession was false and intended to protect Hughes. N.T., 7/9/18, at 17. Attorney Aubele agreed not to raise the issue until Appellant's testimony. *Id.* The trial court permitted the testimony but also ruled that the Commonwealth could call rebuttal witnesses, including the doctor who treated him while he was detained prior to trial, to rebut that Appellant ever had cancer.[8] *Id.* at 17-20.

During the testimony of Trooper Richard Sizer, an audio tape of Appellant's statement to police was played to the jury, wherein Appellant stated that he had an appointment later on the day that Victim was shot at the "cancer center" to check out "some masses in my lungs." N.T., 7/13/18, at 12; Transcript of Police Interview, 7/18/17, at 61.[9] On direct examination,

---

[8] Although Appellant testified at trial regarding his belief that he had cancer at the time of Victim's death, the Commonwealth did not call any rebuttal witnesses.

[9] The transcript of the audio recording of Appellant's statement, which was played at trial and had been previously transcribed, was incorporated as an exhibit to the Notes of Testimony for the July 13, 2018 trial proceedings. *See* N.T., 7/13/18, at 13, Stenographer's Exhibit 1.

Attorney Aubele inquired as to Appellant's cancer screening scheduled for the day of Victim's death. N.T., 7/13/18, at 74-75. Appellant testified that his "false confession" to killing Victim was a result of a "medical issue that [he] felt [he] might have" and the fact that he was almost 30-years older than Hughes and he had less to live for. *Id.* at 78-79. Furthermore, in closing arguments, Attorney Aubele stressed that Appellant initially confessed to shooting Victim because "[h]e thought he had cancer, and he wanted to protect" Hughes. N.T., 7/16/18 (Closing Arguments), at 12. The record thus reflects that Attorney Aubele adequately introduced evidence of Appellant's belief that he had cancer and incorporated it into Appellant's defense at trial.

Appellant next argues that Attorney Aubele was ineffective for failing to object to hearsay statements by Christina Rohaley, Hughes's cousin. Rohaley was present at her mother's house on July 18, 2018 when Hughes arrived from being dropped off by Appellant. N.T., 7/9/18, at 57-58. On direct examination by the Commonwealth, Rohaley testified that Hughes "said that [Appellant] shot [Victim]." *Id.* at 61. Rohaley then read her written statement to the police into the record, in which she reported that:

> [Hughes] said that [Victim] was getting ready to roll a cigarette and [Appellant] walked outside to his van, came back in with a gun and pointed it at [Victim]. [Victim] said, "Are you really going to point a gun at me?" [Appellant] said, "Yes," and pulled the trigger and shot him in the head. She said that he put his body into a box and cleaned up the mess and took his body to his workshop.

*Id.* at 64. Attorney Aubele did not object to this testimony and instead asked several questions to clarify that the written statement accurately reflected what Hughes told Rohaley on the date that Victim was shot. *Id.* at 64-67.

Appellant asserts that no hearsay exception exists that would have permitted Rohaley's testimony and therefore a hearsay objection would have been sustained. Appellant argues that Rohaley's testimony was prejudicial because she was able to identify him as Victim's killer even though she was not present at the time of the shooting.

When asked about his rationale for not objecting to Rohaley's testimony at the PCRA hearing, Attorney Aubele testified that:

> [P]art of our defense strategy was that Deana Hughes was the shooter and what Christina Rohaley was testifying to might have been hearsay but it was completely different than what Deana Hughes ended up admitting to doing and what role she actually had in this.

N.T., 9/30/20, at 12. Attorney Aubele explained that while Hughes told her family that Gambrel did all of the cleaning of the blood after the shooting and put the body in a box by himself, Hughes's account to the police and her testimony at the preliminary hearing later changed to her participating in the clean-up, assisting putting the body in the box, and going with Appellant to his shop after the shooting. *Id.* at 12, 25-26. Attorney Aubele asserted that Hughes's inconsistent accounts undermined the credibility of her identification of Appellant as the shooter at trial. *Id.*

We conclude that Attorney Aubele's decision to not object to Rohaley's hearsay testimony was reasonably based upon his trial strategy to attack the credibility of Hughes's testimony that Appellant shot Victim.[10] Hughes testified that, after the shooting, she assisted in cleaning the Victim's blood, went with Appellant to the workshop he used for his contractor business to get a box, and helped in placing the box containing Victim's body into Appellant's van. N.T., 7/10/18, at 127-34. Attorney Aubele extensively cross-examined Hughes regarding the inconsistencies in her various accounts of the events following the shooting of Victim, showing that she had recounted the events differently at the preliminary hearing and to the police. *Id.* at 161-94. Furthermore, Attorney Aubele vigorously attacked Hughes's credibility in his closing argument, asserting that her recollection of the events of the shooting "drastically changed" between her accounts to her family, to the police, at the preliminary hearing, and then at trial. N.T., 7/16/18 (Closing Arguments), at

---

[10] The PCRA court concluded that this ineffectiveness claim lacked arguable merit because Rohaley's written statement to police would have been admissible under the hearsay exception for a prior inconsistent statement of a declarant-witness as it conflicted with Hughes' statements to the police. *See* PCRA Court Opinion, 1/5/21, at 4; Pa.R.E. 803.1(1). However, Rohaley's statement to police would not have been admissible under the prior inconsistent statement exception because the prior statement was made by Rohaley rather than being a statement by Hughes. *See* Pa.R.E. 803.1(1) (providing for the admission of "[a] prior statement **by a declarant-witness** that is inconsistent with the declarant-witness's testimony") (emphasis added). We note that we may affirm the PCRA court's decision on any basis apparent on the record. *Commonwealth v. Elliott*, 249 A.3d 1190, 1193 n.3 (Pa. Super. 2021); *Commonwealth v. Pou*, 201 A.3d 735, 740 (Pa. Super. 2018).

5-9. Attorney Aubele's decision to allow Rohaley to describe what Hughes told her about the shooting thus added one more inconsistent statement by which he could attack her credibility. Accordingly, Appellant is due no relief on this issue.

In his third issue, Appellant argues that Attorney Aubele was ineffective for failing to appeal the denial of the motion to suppress Appellant's statement to Corporal Thomas Ulintz of the Pennsylvania State Police that "[n]obody [was present in the garage of his workshop] that is alive at least." N.T., 7/10/18, at 47. Appellant made this statement upon being detained by Corporal Ulintz outside of the garage and patted down for weapons; Corporal Ulintz asked Appellant "if anything was in there" in reference to Appellant's right pocket, and Appellant responded "nobody that is alive at least." *Id.* at 45-47. Corporal Ulintz then asked him to clarify his statement and Appellant said, "I thought you were talking about inside the garage, not inside my pocket." *Id.* at 47-48. Corporal Ulintz did not further inquire as to who might be inside the garage. *Id.* at 48.

Appellant argues that the statement "nobody [is in the garage] that is alive at least" was hearsay and that no exception applied to permit its admission. Appellant contends that Attorney Aubele demonstrated no reasonable basis at the PCRA hearing for his failure to appeal from the denial of suppression and that counsel recognized the prejudicial value of the statement as showing a "callous or careless . . . disregard for the condition of" Victim's body. N.T., 9/30/20, at 14.

- 11 -

The PCRA court concluded that no prejudice was evident from Corporal Ulintz's testimony, noting Attorney Aubele's testimony at trial that he succeeded on cross-examination in demonstrating that Appellant's statement was shown to be more the spontaneous result of a miscommunication than incriminating. PCRA Court Opinion, 1/5/21, at 5; N.T., 7/10/18, at 52-53, 55; N.T., 9/30/20, at 14. While we agree with the PCRA court that there is little prejudice to the admission of Appellant's statement, we note a more fundamental flaw with Appellant's claim. Appellant asserts in his PCRA petition and on appeal that Attorney Aubele was ineffective for failing to appeal from the denial of the motion to suppress because Corporal Ulintz's testimony was hearsay; however, the suppression motion was not based upon a hearsay objection but rather that the statement was taken in violation of his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and **Miranda**. Omnibus Pre-Trial Motion, 1/18/20, ¶¶10-15. After holding a hearing, the trial court denied the motion to suppress Appellant's statement as it was not made during a custodial interrogation. Trial Court Opinion, 4/12/18, at unnumbered page 5.

Therefore, there is no arguable merit to Appellant's claim that Attorney Aubele was ineffective for failing to argue on direct appeal that the suppression motion was improperly denied because Corporal Ulintz's testimony was hearsay as hearsay was not asserted as grounds for the suppression motion. To the extent Appellant argues that Attorney Aubele should have objected to Corporal Ulintz's testimony at trial on the basis of hearsay, this argument also

lacks merit as Corporal Ulintz's testimony about Appellant's statements to him fell under the exception for an opposing party's admission. *See* Pa.R.E. 803(25)(A) (statement made by opposing party and offered against him shall not be excluded by rule against hearsay); *Commonwealth v. Edwards*, 903 A.2d 1139, 1157-58 (Pa. 2006) (hearsay exception for opposing party's admission applies to criminal defendants and therefore witness's testimony regarding defendant's out-of-court statement that he was involved in a robbery was admissible).

Turning to his fourth issue, Appellant contends that Attorney Aubele was ineffective for failing to appeal the denial of his objection related to two photographs of Victim's corpse that were shown at trial. Appellant argues that he requested that counsel raise the issue on appeal and that the issue has merit because the photographs were more prejudicial than probative. Appellant asserts that Attorney Aubele's explanation for failing to raise the issue—that he had bargained with the Commonwealth to only admit two photographs—was not reasonable as Attorney Aubele should not have agreed to the admission of any photographs when Appellant was against their entrance.

During the testimony of Trooper Charles Smolleck, the Commonwealth admitted various photographs of the scene where Victim's body was found, including two of Victim's body. N.T., 7/9/18, at 95; Commonwealth Exhibit 19, 20. According to the trial court, the two photographs were identical, except the second was a blown-up version of the first. N.T., 7/9/18, at 94-

95. At the time of the admittance of these photographs, Attorney Aubele noted his objection that had been made previously off the record. *Id.* at 95. The trial court instructed the jury that the photographs were graphic and only should be considered in the context of the abuse of a corpse charge and should not affect the jury's consideration of any other issue. *Id.* at 90. The trial court noted on the record after the jury retired that it allowed the one photograph (in two different versions) into the record over an objection because it was clearly relevant to the abuse of a corpse charge, but the court excluded a second photograph as cumulative and prejudicial. *Id.* at 102-03. In addition, the trial court explained that it would often prefer to admit photographs of a corpse in black and white, but the court felt that, upon viewing the photographs, black and white was inadequate to show the way the body was placed in the box. *Id.*

At the PCRA hearing, Attorney Aubele testified that he objected to the admission of the exhibits and that he also came to an agreement with the Commonwealth to admit the admission of two non-color photographs. N.T., 9/30/20, at 13, 19, 26. In light of the clear relevance of these photographs to prove that Appellant committed the abuse of a corpse offense, Attorney Aubele felt that there would be no merit to an appeal of the issue. *Id.* The PCRA court found that, in light of Attorney Aubele's agreement to only admit two black-and-white photographs and their clear relevance, the issue would not have been found meritorious on direct appeal. PCRA Court Opinion, 1/5/21, at 5.

We note that there is some discrepancy between Attorney Aubele's recollection at the PCRA hearing and the events at trial, as it appears that the photographs that were admitted were in color, not black and white. We further observe that the photographs do not appear in the record in this PCRA appeal and therefore we cannot review the content of the two photographs that were shown to the jury. *See* Pa.R.A.P. 1921, Note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials."); ***Commonwealth v. Holston***, 211 A.3d 1264, 1275-76 (Pa. Super. 2019) (*en banc*) (material outside of the certified record does not exist for purpose of appellate review and may result in waiver of issue).

Nevertheless, to the extent we are able to address this issue, we find that there is no arguable merit to Appellant's claim. The admissibility of photographs of a homicide victim is a question addressed to the discretion of the trial court and requires that the court undertake a two-part analysis:

> First, the trial court must examine whether the particular photograph is inflammatory. If the photograph is not inflammatory, it may be admitted if it is relevant and can serve to assist the jury in understanding the facts of the case. If the photograph is inflammatory, the trial court must determine whether the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (internal citations omitted).

Photographs of dead bodies "by their very nature can be unpleasant, disturbing, and even brutal." *Commonwealth v. Johnson*, 42 A.3d 1017, 1033 (Pa. 2012) (citation omitted). However, "the mere depiction of blood" in a photograph is not by itself inflammatory. *Commonwealth v. Spell*, 28 A.3d 1274, 1279 (Pa. 2011). Moreover, photographs that show the condition and location of the victim's body when discovered are relevant to an abuse of a corpse charge. *Id.* at 1280; *Commonwealth v. Hutchison*, 164 A.3d 494, 502 (Pa. Super. 2017); *see also* 18 Pa.C.S. § 5510 (abuse of a corpse is shown where the defendant "treats a corpse in a way that he knows would outrage ordinary family sensibilities").

Nothing in the record here indicates that the photographs of Victim that were shown to the jury in this case were inflammatory. While the trial court allowed two photographs to be admitted, they were the same photograph with the second being a zoomed-in version of the first; the trial court ruled that the admission of a second unique photograph would have little additional probative value and be unnecessarily prejudicial. N.T., 7/9/18, at 94-95, 102-03. The photographs depicted the manner in which Appellant placed the body inside of a cardboard box and were thus clearly relevant to the jury's determination of whether he committed abuse of a corpse. *Id.*; *Spell*, 28 A.3d at 1280; *Hutchison*, 164 A.3d at 502.

The trial court also explained that while it would often prefer black-and-white photographs, in this case "the mechanism of putting the body in the box would not be visible in black and white because the blood would fade into the

- 16 -

green [of the interior of the box] and not be as visible." N.T., 7/9/18, at 102-03. Furthermore, the trial court reduced any prejudice caused by the photographs by instructing the jurors of the limited reason for their admission and cautioning them not to be emotionally swayed when viewing the photographs. *Id.* at 90; *Spell*, 28 A.3d at 1280. In light of the lack of any showing that the photographs were inflammatory and their clear relevance, we conclude that Appellant has not proved that any appeal related to this issue would be found meritorious. *See Spell*, 28 A.3d at 1279-80 (two color photographs of blood-covered body found in parking lot were not inflammatory and were relevant to show defendant committed abuse of a corpse); *Hutchison*, 164 A.3d at 501-02 (four color photographs depicting various parts of victim's decomposing body were not inflammatory and were relevant to show abuse of corpse). Therefore, he is not entitled to relief on his fourth appellate issue.

Next, Appellant argues that Attorney Aubele was ineffective for failing to appeal the trial court's denial of publication of certain photographs of the basement of Victim's residence showing boxes of shotgun shells. Appellant contends that Attorney Aubele's own testimony at the PCRA hearing reflected that the photographs were beneficial to Appellant's attempt to cast doubts on the credibility of Hughes's testimony that Appellant left the house to retrieve the murder weapon prior to shooting Victim. Appellant further asserts that there was no cause to not publish them as others in a series of photographs showing the basement were published.

At trial, the Commonwealth introduced and published to the jury eight photographs of the basement area of the house taken by Trooper Charles Morrison, the forensic investigator who took the photographs; the photographs were admitted in part to show that no firearms or ammunition were discovered in the house. N.T., 7/11/18 (Morning Session), at 63-72; Commonwealth Exhibits 82-89. On cross-examination, Attorney Aubele showed Trooper Morrison three additional photographs that he took of the basement area, which showed two boxes of what appeared to be shotgun shells. N.T., 7/11/18 (Morning Session), at 77-80; Defense Exhibits D-F. Trooper Morrison agreed that the photographs were consistent with boxes of Remington and Winchester ammunition. N.T., 7/11/18 (Morning Session), at 80. After a recess and further discussion, the Commonwealth stipulated that the photographs showed two boxes of Remington and Winchester shotgun shells. N.T., 7/11/18 (Afternoon Session), at 6. The trial court admitted the photographs into the record but refused Attorney Aubele's request to publish them as Victim was shot with a .22 caliber rifle and therefore the shotgun shells only had impeachment value. *Id.* at 3-7.

At the PCRA hearing, Attorney Aubele testified that the three photographs he admitted were relevant to his trial strategy to show that Hughes was lying when she said that Appellant went out to a vehicle on the property to retrieve a weapon when it was inside the house the entire time, as evidenced by the boxes of ammunition. N.T., 9/30/20, at 15. Attorney Aubele stated that he made a request to publish the three photographs both

on and off the record and he thought he "made a pretty good scene about it," which was effective before the jury. *Id.* at 15-16. Appellant noted that, while the photographs were not published, "when [] the jury [went] out to deliberate[,] the first question that they had [] was that they wanted to see the photographs that the defense attorney had attempted to publish to the jury." *Id.* at 16. Attorney Aubele represented that the jury did in fact then view the photographs while deliberating and he opined that "it was actually more beneficial for us that our request [to publish] had been denied." *Id.*

In its opinion, the PCRA court found that there was no merit to this claim and that it was moot because the jury "in fact saw the photographs after all." PCRA Court Opinion, 1/5/21, at 6.

Upon our review, we note that no jury questions were preserved in the record and the notes of testimony do not reflect that the jury asked any questions or that the three photographs were viewed by the jury during deliberations. Nevertheless, we agree with the trial court's explanation at trial as to why publication of the photographs was not proper, and therefore we find that there would have been no arguable merit to an appellate claim raising the issue. As the trial court explained, the shotgun shells present in the basement were admissible for purposes of argument and as impeachment evidence to show that Trooper Morrison's representation that no guns or ammunition were found in the residence was inaccurate. N.T., 7/11/18 (Morning Session), at 80; N.T., 7/11/18 (Afternoon Session), at 4-7. However, the photographs of the shotgun shells were not relevant to the issue

of whether the murder weapon—a rifle that fired .22 caliber bullets rather than shotgun shells—was inside the house or it needed to be retrieved from a vehicle outside. N.T., 7/11/18 (Afternoon Session), at 4-7. Therefore, the photographs of the shotgun shells were of limited value to assist the jurors in "understand[ing] testimony as they hear it" and the trial court did not abuse its discretion in prohibiting the publication of the photographs. *Id.* at 7; *cf. Commonwealth v. Ali*, 112 A.3d 1210, 1218 (Pa. Super. 2015), *vacated on other grounds*, 149 A.3d 29 (Pa. 2016) (finding no abuse of discretion with trial court's decision to not publish false laboratory report relied upon by defendant when selling controlled substance based upon "danger that the jury might skew or place undue emphasis upon the contents of the report").

In his sixth issue, Appellant asserts that Attorney Aubele was ineffective for failing to appeal the denial of his objection to the district attorney's questioning of Appellant regarding his possession of two shotguns in his home on the grounds that the question assumed facts not in evidence. Appellant argues that this line of questioning "confus[ed] the jury and divert[ed] their attention from the facts of the case." Appellant's Brief at 28. Appellant further asserts that Attorney Aubele's representations at the PCRA hearing that the testimony regarding the shotguns was a "nonissue" did not constitute a reasonable basis for not raising the issue on direct appeal. N.T., 9/30/20, at 18.

The following exchange took place during cross-examination of Appellant:

Q. And, you told the police you didn't ever own a gun, didn't you?

A. Not that I had never owned a gun, no.

Q. You didn't have any guns at the time this happened?

A. No.

Q. Did you have a shotgun?

A. I didn't.

Q. You didn't?

A. No.

Q. Never?

A. No.

Q. Over your home on. . .

A. There are two shotguns there.

Q. There are two shotguns over there, isn't there?

A. Yes.

N.T., 7/13/18, at 97. Attorney Aubele then objected, but the trial court overruled the objection on the basis of a potentially prior inconsistent statement to police that he did not own a gun. *Id.* at 97-98. A short recess was taken directly after the trial court's ruling, and Appellant's possession of shotguns was not revisited at trial.

Addressing this claim, the PCRA court concluded that Appellant volunteered the fact that he had two shotguns at his house prior to the district attorney's question that drew Attorney Aubele's objection. PCRA Court Opinion, 1/5/21, at 7. The PCRA court further noted that the questions regarding Appellant's access to weapons were relevant as it made it more

- 21 -

likely that he also had access to the murder weapon and it was not at Victim's house. *Id.*

The record here supports the PCRA court's conclusion that Appellant first mentioned that he had "two shotguns" and that Attorney Aubele's objection was only based upon the district attorney's repetition of this assertion. N.T., 7/13/18, at 97. Furthermore, the Commonwealth was entitled to probe Appellant's credibility and the question of whether he had access to weapons on cross-examination. Therefore, even if Attorney Aubele had appealed from the denial of his objection on direct appeal, it would not have been found meritorious. Moreover, even if Appellant could demonstrate he met the first prong of the ineffectiveness test, he has failed to establish how the brief reference to him being in possession of weapons that were not consistent with the murder weapon prejudiced him.

In his last issue, Appellant argues that Attorney Aubele was ineffective for eliciting testimony from Appellant that he was incarcerated in the Fayette County Prison at the time of trial. Appellant contends that the "repeated references to [his] incarceration constituted a constant reminder for the jury that Appellant was" incarcerated and that this decision by counsel "created a negative image of his client in the minds of the jury." Appellant's Brief at 29-30.

On direct examination, Appellant stated that he was residing at Fayette County Prison and he had been there for 11 and ½ months at the time of his testimony. N.T., 7/13/18, at 50. Attorney Aubele also asked Appellant

whether he was being treated for cancer in jail, to which Appellant responded in the negative.  *Id.* at 75.  Attorney Aubele explained his rationale for these questions at the PCRA hearing:

> [I]t was part of the trial strategy that [Appellant] was taking the blame for something that he did not do and that he had been placed in the prison where he didn't have access to drugs and where he didn't have access to medical treatment and he had changed his mind, that he did not want to take the fall for something that he didn't do.  Also at that point in time he had been in prison for approximately a year and [] we also argued that [Hughes] was going to be receiving probation for her role [in Victim's killing].  Even if [Appellant] was acquitted he was going to do more time than her.

N.T., 9/30/20, at 17; *see also id.* at 24, 27.

The PCRA court determined that this issue was meritless because "the fact that [Appellant] had been housed in the Fayette County Prison had already been mentioned many times during the trial as part of [Attorney Aubele's] strategy."  PCRA Court Opinion, 1/5/21, at 6.  It is unclear what earlier references to Appellant's incarceration to which the PCRA court refers.  However, we conclude that Appellant is not entitled to relief on this claim on the alternate basis that Attorney Aubele's questioning formed a part of his reasonable trial strategy to persuade the jury that Appellant took responsibility for Hughes' crime and Appellant had already been punished far more than Hughes ever would.  Attorney Aubele cross-examined Hughes to this effect, asking whether she took advantage of Appellant by having him provide her with drugs and other favors and whether she took "advantage of him when [she] allowed him to take the rap for" her.  N.T., 7/10/18, at 194.

Attorney Aubele emphasized during closing arguments that Hughes was "free" at the time of trial and "the most punishment [that] she is going to receive for her involvement in this incident is probation[, while Appellant] has been incarcerated for nearly a year." N.T., 7/16/18 (Closing Arguments), at 14.

Our Supreme Court has explained that

although generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged. Moreover, although the Court has disapproved forcing a defendant, who was incarcerated prior to trial, to attend trial in identifiable prison clothing, this prohibition is based primarily upon the impact that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire might have upon the jury.

*Commonwealth v. Johnson*, 838 A.2d 663, 680-81 (Pa. 2003) (internal citations and quotation marks omitted); *see also Commonwealth v. Wilson*, 649 A.2d 435, 446 (Pa. 1994) (counsel not ineffective for failing to object to testimony related to defendant's incarceration where testimony did not expressly state or imply that defendant was being incarcerated for a prior crime rather than the criminal episode for which he was on trial).

Here, Attorney Aubele's references to Appellant's incarceration was in accordance with the standards set forth by our Supreme Court as it was clear that Appellant was being detained for the purpose of trial and Attorney Aubele raised the issue only as part of his strategy to gain sympathy for Appellant and to highlight the fact that Hughes would never serve time. Moreover, Attorney Aubele did not go so far as to have Appellant dressed in prisoner's

clothing for trial, which would unnecessarily portray Appellant in a negative light. *See* N.T., 9/30/20, at 24 ("Well I certainly didn't want him dressed in [prison clothing] for trial . . ."). As Attorney Aubele had a reasonable basis for raising the issue of Appellant's pre-trial detention, we conclude that Appellant is not entitled to relief on his final appellate issue.

Having determined that Appellant is not entitled to relief on any of his appellate issues, we affirm the PCRA court's denial of his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2022